JAMES E. PEARCE V. MIGNONETTE C. PEARCE.

No. 2118. Decided February 1, 1911.

**1.—Will—Death of Devisee Without Issue.**

Under a will devising certain real property to a daughter of testator, but directing that on her death without heirs of her body the property devised "shall return to the body of my estate, to be partitioned and divided as aforesaid between the survivors," the devisee took a fee simple estate which became absolute in her on the birth of a child which survived her, and passed by her will to the devisee named therein. (P. 74.)

**2.—Will—Subsequent Birth of Child.**

Where the will of a married woman, then without issue, devised real property to her husband "in fee simple without condition," and other real property to her mother, the latter bequest "to be null and void in case of living issue born of my body," the bequest to the husband was not avoided by the subsequent birth of a child to testator, such child being "mentioned" in the will within the meaning of article 5345, Revised Statutes, avoiding such will in favor of an afterborn child not provided for or mentioned." (Pp. 74-76.)

**3:—Same—Case Stated.**

A married woman made a will on Jan. 9, 1902, having no issue at that time. A child was born to her on Feb. 26, 1902, and she died on March 4, 1902, the child surviving. The will left certain of her real property to her husband who was charged with the payment of $200 annually to her mother during the latter's life. It also left certain real property to her mother, or if she should die before testatrix, to her two sisters, this bequest "to be null and void in case of living issue born of my body." Held, that the bequest to the husband must be held to have been made in contemplation by the testatrix of the expected birth of the child, and was not made void or revoked by such birth. (Pp. 74-82.)

**4.—Will—Mention of Unborn Child.**

In determining whether the language of a will is to be construed as having "mentioned" an unborn child, the words used are to be considered with reference to the situation and facts within the knowledge of the testatrix and necessarily contemplated by her. (P. 79.)

**5.—Cases Distinguished.**

Cases upon the revocation of wills by the subsequent birth of issue to testator. Chicago, B. & Q. R. Co. v. Wasserman, 22 Fed., 872; Breese v. Stiles, 22 Wis., 120; Walker v. Hall, 34 Pa. St., 483; Waterman v. Hawkins, 63 Me., 156, distinguished by the terms of the statutes under which they were decided. (Pp. 76-79.)

Error to the Court of Civil Appeals, Third District, in an appeal from Travis County.

The action was brought by James E. Pearce against Lillian Carrington and others for partition of land. Defendants appealed from a judgment for plaintiff. It was reversed and the case remanded (124 S. W., 129) whereupon plaintiff obtained a writ of error, the rulings practically settling the case.

*D. W. Doom, D. H. Doom,* and *N. A. Steadman,* for plaintiff in error.—The will of W. H. D. Carrington vested in Mignonette Carrington and Lillian Carrington, his daughters, as tenants in common, the property involved in this suit in fee simple, subject to be defeated by the death as to either one without heirs of their bodies to be born. Revised Statutes, art. 627; Chase v. Gregg, 88 Texas, 552; Hawkins

v. Lee, 22 Texas, 544; Singletary v. Hill, 43 Texas, 588; Lacey v.
Floyd, 99 Texas, 112; St. Paul's Sanitarium v. Freeman, 102 Texas,
376; Scott v. Brin, 48 Texas Civ. App., 500; Laval v. Staffel, 64 Texas,
370; McKee v. McKee, 82 S. W., 451; Calder v. Davidson, 59 S. W.,
300; 16 Cyc., 602-604, 619, 626; 1 Washburn on Real Property, 64
sub., 92; Seay v. Cockrell, 102 Texas, 280.

The trial court correctly found as follows: "2.   That article 5345
of the Revised Statutes of 1895 is not applicable to the will of the said
Mignonette Carrington Pearce for the reason that the issue born after
the making of said will, was mentioned in said will, and a portion of
the estate left subject to inheritance by said issue.   Rev. Stat., art.
5334; Hockensmith v. Slusher, 26 Mo., 237; Guitar v. Gordon, 17 Mo.,
408; McCourtney v. Mathes, 47 Mo., 533; Gerrish v. Gerrish, 8 Ore.,
351, 34 Am. Rep., 585; Peters v. Siders, 127 Mass., 135, 30 Am. Rep.,
671; Brown v. Brown, 98 N. W., 718.

*A. S. Phelps*, for defendants in error.—The words, "the heirs of
their bodies to be born," as used in the will of W. H. D. Carrington,
conveyed only a life estate in Mignonette C. Pearce, wife of James E.
Pearce, because said words mean children or issue born of the said
Mignonette C. Pearce, and only a life estate vested in her and at her
death the fee vested in appellant, her child.   Simonton v. White,
93 Texas, 57; Calder v. Davidson, 59 S. W., 300; Hancock v. Butler,
21 Texas, 804; 25 Am. & Eng. Ency., 639; Lacey v. Floyd, 87 Texas,
675; Brown v. Bryant, 17 Texas Civ. App., 455; Sanders v. Wade, 30
S. W., 656; McMeekin v. Smith, 21 S. W., 353.

The statute is mandatory, and appellant having been born after her
mother had executed her will, and there being no mention of or pro-
vision for appellant in said will, the same is of no effect and is void.
Rev. Stats., art. 5345.

MR. JUSTICE RAMSEY delivered the opinion of the court.

1.   We think there can be no doubt that Mrs. Mignonette Carrington
Pearce obtained a fee simple title to the land which is the subject of
the controversy in this case.   The disposition of this question by the
Court of Civil Appeals is, we think, based on satisfactory reasons,
well supported by the authorities.   We think it should be further held,
whether under the will of her father the fee which passed into
the land in suit was absolute or was determinable upon the condition
of her death without issue, that since she left issue a fee simple estate
vested in her and became absolute upon the birth of the child.   Rev.
Stats., art. 627; Chase v. Gregg, 88 Texas, 552; Laval v. Staffel, 64
Texas, 370; McKee v. McKee (Ky.), 82 S. W., 451; 16 Cyc., pp.
602-4.

2.   A more important and difficult question arises, however, as to
whether, under the will of Mrs. Pearce, her husband, Jas. E. Pearce,
took and acquired a perfect title to the land in controversy, or whether
under the law, the birth of her daughter, Mignonette, operated a revo-
cation of the will.   To solve and determine this question, which is one
of first impression in this State, it will be necessary to refer at some

length to our statutes and to consider in connection with them the facts of the case.

It appears from the record that Jas. E. Pearce and Mignonette Carrington were married on the 2d day of June, 1900; that the will under consideration was executed on the 9th day of January, 1902, and that the defendant in error, Mignonette C. Pearce, daughter of the said Jas. E. and Mignonette Carrington Pearce, was born on the 25th day of February, 1902, and soon thereafter on, to wit: the 4th day of March, 1902, the said Mignonette Carrington Pearce died. The following clauses of the will of Mrs. Pearce will be sufficient for the purpose of this decision:

Item 1. "To my husband, James E. Pearce, I bequeath lot 12 and adjacent one-half of lot 11, block 108, city of Austin, on which our home is built and which are my individual property together with any and all rights to and interests in the buildings and improvements that may exist on said lot and a half at the time of my death; the same to be held by him in fee simple without condition."

Item 2. "I bequeath to my husband, James E. Pearce, my interest in 1080 acres of Eislin and other surveys now owned jointly by my sister Lillian and myself, together with all the buildings and improvements upon and appurtenant to same, to be held and enjoyed by him in absolute right and fee simple."

Item 4. "I bequeath my one-fourth interest in the homestead lots of my father's estate, lots 7, 8, and 9 is block 108, city of Austin, to my mother; in case of her death previous to my own to my two sisters, Lillian and Maude. This section is to be null and void in case of living issue born of my body."

There can be no doubt that under and by virtue of the terms of article 5333 of our Revised Statutes, a married woman may execute a will, and that for this purpose she is freed of the usual incidents and disabilities of coverture. If this will is to stand according to its terms, then the husband is entitled to recover the land in controversy. If, tested by the facts, as applied to the law of this State, the birth of a daughter operated, as a matter of law, as a revocation of the will, then the judgment of the Court of Civil Appeals should be affirmed. To determine this question we must refer to the statutes in force in this State having application to this matter. The only articles of our Revised Statutes touching this matter are as follows:

"Art. 5343. When a testator shall have children born and his wife enciente, the posthumous child, if unprovided for by settlement and pretermitted by his last will and testament, shall succeed to the same portion of the father's estate as such child would have been entitled to if the father had died intestate, toward which portion the devisees and legatees shall contribute proportionately out of the parts devised and bequeathed to them by such last will and testament.

"Art. 5344. If a testator having a child or children born at the time of making his last will and testament shall, at his death, leave a child or children born after the making of such last will and testament, the child or children so afterborn and pretermitted shall, unless provided for by settlement, succeed to the same portion of the father's

estate as they would have been entitled to if the father had died intestate, toward raising which portion the devisees and legatees shall contribute proportionately out of the parts devised and bequeathed to them by such last will and testament, in the same manner as is provided in article 5343.·

"Art. 5345. Every last will and testament made when the testator had no child living, wherein any child he might have is ʹnot provided for or mentioned, if at the time of his death he shall leave a child, or leave his wife enciente of a child which shall be born, shall have no effect during the life of such afterborn child, and shall be void unless the child die without having· been married and before he shall have· attained the age of twenty-one years."

It is the contention of the defendant in error that she was never mentioned in the will of her mother, as that term was intended to be construed in the law, nor was any provision made for her. This view is antagonized and resisted by her father who claims that she was both .mentioned and provided for in the will. We think there can be no doubt that, as the law meant that term to be understood, she was mentioned in the will, even if it could be held that she was not provided for in same, and that there was no revocation, and that the estate passed in fee simple to her father James E. Pearce. We have carefully examined the very learned and thorough opinion of the Court of Civil Appeals and the authorities upon which this opinion is based. We have not believed that any of these authorities are, as applied to our statute, directly in point, nor do we believe that the conclusion reached by the· Court of Civil Appeals is sound.

In the case of Chicago, B. & Q. R. Co. v. Wasserman, 22 Fed., 872, Judge Brewer was construing a Nebraska statute. That statute is as follows: "Sec. 148. When any child shall be born after the making of his parent's will and no provision shall be made therein for him, such child shall have the same share in the estate of the testator as if he had died intestate, and the share of such child shall be assigned to him as provided by law in cases of intestate estate unless it shall be apparent from the will that it was the intention ʹof the testator that no provision should be made for such child." In that case it appeared that when Wasserman made his will his first child was about five years of age and that his wife was delivered of a child within about twenty days after the will was made. Judge Brewer seems to have no doubt that as a fact, independent of the statute, Wasserman meant that the wife should take the entire property and would take care of his children; but he says: "But the legal difficulty is this: The statute says that it must be 'apparent from the will that the testator intended that the unborn child should not be specially provided for. How can any intention as to this child be gathered from the will alone? It simply gives everything to the wife; is silent as to the children. If I could look beyond the will, my conclusion would be instant and unhesitating. Limited to the statute by the instrument itself, what can be gathered therefrom? It is simply a devise of all property to the wife. No reference is made to children, born or unborn. Can I infer from its silence an intention to disinherit? If so, the mere omissions from a

will would always stand as proof of an expressed intention. And whatever of apparent hardship there may be in the present case, a fixed and absolute rule prescribed by statute can not, for such reason alone, be ignored." So that it is apparent from the decision that the statute there was meant to provide that the intention of exclusion of the child must be apparent from the language of the will and could not be aided by extrinsic testimony. That statute, it is obvious, is quite different from our own, in that it is there provided that, tested by the language of the *will,* it must be *apparent* therefrom that no provision was intended to be made for the unborn child. That case is distinguishable from the one at bar in other important respects. The will is set out at length in the opinion and contains no kind of reference, express or implied, to any child, or to the possibility of the existence of children, whereas, in the case before us, in the fourth clause copied above, Mrs. Pearce seems to have had in view the contingency of having living issue born of her body. When the difference in the statutes is considered, and when we test the Wasserman case, *supra,* by the recitals of the will there considered, the difference is demonstrable.

In the case of Bresee v. Stiles, 22 Wis., 120, the court had under consideration a case involving the construction of a statute almost identical with the Nebraska statute. The Wisconsin statute was in this language: "When any child shall be born after the making of his parent's will, and no provision shall be made therein for him, such child shall have the same share in the estate of the testator as if he had died intestate; and the share of such child shall be assigned to him as provided by law in case of intestate estates, unless it shall be apparent from the will that it was the intention of the testator that no such provision should be made for such child."

While in that case the will is not set out at length, a summary of its terms is given, and there is no reference, direct or indirect, or by the remotest inference, to the possible existence of other children not then born. It appears that some time thereafter three other children were born. The will was executed April, 1855, and the testator died in August, 1861. In the meantime three children had been born after the making of the will for whom no provision was made, and these facts, it was contended, should raise a strong presumption that it was the intention of the testator that the afterborn children should not take any portion of his estate. This contention is met and answered by the court in this language: "But the difficulty with this argument is, that we are not permitted to look outside of the will to ascertain the purpose of the testator upon this point. For the statute positively declares, that unless it is apparent from the will itself, that it was the intention of the testator that no provision should be made for the afterborn children, then they shall share in the estate as though no will had been made."

In the case of Walker v. Hall, 34 Pa. St., 483, Walker's will left his property to his wife, Anna Gray Walker. It contained, however, the following clause: "Having the utmost confidence in her integrity, and believing that should a child be born to us, she will do the utmost

to rear it to the honor and glory of its parents." It was shown that after the execution of the will, Walker and wife had a child born to them who was living at the death of the father and who survived at the date of the trial. Without a careful reading of the report, this case would seem to be in point and to sustain the contention of the defendant in error. However, when construed with reference to the language of the statute in Pennsylvania, it is not, we think, in point. Originally, by the Act passed the 4th of February, 1748, the rule obtaining in that State was as follows: "That where any person shall, at any time hereafter, make his last will and testament, and afterwards marry, or have a child or children, *not named in any such will,* and die, although such child or children be born after the death of their father, every such person, so far as shall regard the wife after married, or the child or children after born, shall be deemed and construed to die intestate; and such wife, child, or children shall be entitled to like purparts, shares, and dividends of the estate, real and personal, of the deceased, as if he had actually died without any will." It will be noted that in the original report the words, "Not named in any such will," are italicized, evidently for the reason that there is a conspicuous absence of them in the later Act to which attention will be hereafter called. By the Act passed the 23d day of March, 1764, the above statute was repealed, and the words, "Not named in any such will," disappeared. Later, the 19th of April, 1794, the following statute was passed by the Legislature of Pennsylvania and was the Act construed by the court in the case last named: "That when any person shall make his last will and testament, and afterwards shall marry, or have a child or children, *not provided for in such will,* and die, leaving a widow and child, or either a widow, or child or children, although such child or children be born after the death of their father, every such person, so far as shall regard the widow, or child or children after born, shall be deemed and construed to die intestate; and such widow, child or children shall be entitled to such purparts, shares, and dividends of the estate, real and personal, of the deceased, as if he had actually died without any will." So that a careful analysis of this case will disclose that the extent of the holding in the Walker v. Hall case was that no provision was by the terms of that will made for the afterborn child so as to prevent a revocation of the will. While not stated, it must seem obvious that the court attached some importance to the language, "not named in such will," which had appeared in the early statutes and omitted in the latter enactment, and in the fact that its omission evidenced a manifest intention to require provision to be made for the afterborn child as the indispensable requisite to prevent a revocation. Hollingsworth's Appeal, 51 Pa. St., 518, simply holds that the decision in that case should be governed by Walker v. Hall, *supra.*

In Watterman v. Hawkins, 63 Me., 156, the statute under consideration in that case is not set out *in haec verba,* but, as we gather from the opinion, the statute there provided that, "there must be provision made specifically for the unborn child." The court there said: "He can not be disinherited like a child, or the issue of a deceased child, when it appears that the omission to refer to him was intentional. Un-

less he is 'provided for,' the conclusive presumption is that he was not expected, and the law declares that he shall take the same share of his father's estate as if the father had died intestate." In that case the testator died leaving his widow enciente, and his father surviving him, and the child Gertrude, for whose benefit the suit was brought, was born two months after his death. By the terms of the will in that case he gave his house, and other property, to his wife for her natural life if she remained unmarried, providing that "in case of her marriage, the same is to become the property of my heirs, and its use to revert to them; and, in any event, after her decease, the same is to descend to my heirs." In that case there was neither a mention of the unborn infant in the will, nor provision made for her, and it was there held that, under the terms of the Maine statute above referred to, such infant would take the same share of her father's estate as if he had died intestate.

The opinion in that case also contains the significant remark, that, "there is nothing in such a provision to suggest that the child was thought of by the testator. The form of expression would indicate the contrary." A careful reading of all the cases cited by the Court of Civil Appeals in support of their decision has led us to believe that they are distinguishable from the case at bar, and that, tested with reference to the statute on which they were based, they do not sustain the conclusion reached by them.

We think the true interpretation of our statute is that, in testing and determining whether the unborn child is mentioned in the will, that the language of the testator (the testatrix in this case) should be construed and considered with reference to the situation and facts within his knowledge, and having in mind the considerations on which and with reference to which he was then acting. This seems to be the holding of the Supreme Court of Massachusetts in the case of Peters v. Siders, 126 Mass., 135, 30 Am. Rep., 671, where the court says: "The judge might well find that the fact that the testatrix was so soon to be delivered of her first child must have been in her mind when the will was made, and could not have been forgotten. There is no suggestion of any mistake of fact or law, or any ignorance on the part of the testatrix, or any oversight of the scribe, as the cause of the omission. The making of the will at that time warrants a presumption that it was made in anticipation of her confinement, and with a purpose that if the event should prove fatal, her property should go to him on whom could devolve the care and support of the child."

In the Supreme Court of Missouri in the case of Hockensmith v. Slusher, 26 Mo., 237, in construing an article of their statute, uses the following language:

"This provision of the statute has been several times before this court for judicial construction, and it may now be considered as settled that the object of it is to produce an intestacy only when the child or the descendant of such child is unknown or forgotten, and thus unintentionally omitted; and the presumption that the omission is unintentional may be rebutted when the tenor of the will or any part of it indicates that the child or grandchild was not forgotten. (Guitar

v. Gordon, 17 Mo., 408; Beck v. Metz, 25 Mo., 70; Terry v. Toler (Foster), 1 Mass., 146; Wild v. Brewer, 2 Mass., 570; Church v. Crocker, 3 Mass., 17; Wilder v. Goss, 14 Mass., 359; Wilson v. Fosket, 6 Met., 400; Merrill v. Sanborn, 2 N. Hamp., 499; Block v. Block, 3 Mo., 594.) The statute extends only to a case of entire omission, and the mention of a child without a legacy or other provision for him is sufficient to put him off from a distributive share of the estate; (3 Mo., 594; 1 Mass., 146); and whenever the mention of one person, by a natural association of ideas, suggests another, it may reasonably be inferred that the latter was in the mind of the testator and was not forgotten or unintentionally omitted. Thus it has been decided that by the mention of a daughter, though dead at the time of making the will, it will be inferred that her children were not forgotten. (17 Mo., 408.) The mention of grandchildren will exclude the parent. (2 Mass., 570; 3 Mass., 17.) Naming a son-in-law is sufficient to show that the daughter was brought to the recollection of the testator; (14 Mass., 359); and naming two grandchildren will indicate that their brothers and sisters not named were intentionally omitted. (2 New Hamp., 499.)"

In the early case of Guitar v. Gordon, 17 Mo., 408, there is the following admirable statement as to the purpose of such a statute as ours as well as the proper rules of interpretation in arriving at the true intent of the same:

"Our laws permit every person of sound mind and of competent age, to dispose of all his estate, real and personal, saving to the widow her right of dower. He may disinherit his children and bequeath his property to whom he sees fit. The eleventh section of the Act concerning wills provides, that if any person make his last will, and die, leaving a child or children, or descendants of such child or children (in case of their death), not named or provided for in such will, every such testator, so far as shall regard any such child or children, or their descendants, not provided for, shall be deemed to die intestate. This section has been held only to make provision for children or their descendants, unintentionally omitted by their parents from forgetfulness or any other cause. If a child is expressly excluded from any portion of the estate by the will, he is provided for in the meaning of the Act In such case, it plainly appears that the child was not forgotten. Block v. Block, 3 Mo. Rep., 408. A law in Massachusetts directs that, in case a child or children, or their legal representatives, in the event of their death, shall not have a legacy given him, her or them, by the will of their father or mother, he, she, or they, shall have a proportion of the estate of their parents assigned unto him, her or them, as though such parent had died intestate. Under this statute, it was held that, if the testator, in his will, mentions a son-in-law and one of his children, it thereby sufficiently appears, that the other grandchildren by that son-in-law were in the mind of the testator, and therefore not entitled to come in, as if unintentionally omitted. Wilder v. Goss, 14 Mass., 357. If a child is named in a will and it is known that such child has descendants, it is impossible to say they were not in the mind of the testator. The object of the section must be borne in

mind. It is not to prevent parents from disinheriting their children, but merely to make provision for those who may have been unintentionally omitted. Under a statute in New Hampshire, similar in its language to that above cited from the code of Massachusetts, it was held, that a testator, leaving seven grandchildren, children of a deceased son, if in his will he mentions two of these grandchildren, and also their father, the presumption of law was, that the other five grandchildren were not omitted through forgetfulness. Merrill & Wife v. Sanbourn, 2 N. H., 499."

It should be remembered in this case that, as we have seen, the property in question was the separate estate of Mrs. Pearce. Under the law she might deed same, when joined by her husband, to any person for any consideration satisfactory to her, and no child or children could complain. Under the law she is authorized to direct the disposition of the same by will, either to the natural objects of her bounty, or to dedicate it to charity, or to convey it to strangers. And her right so to do can not be abridged or denied unless inhibited under a fair construction of the statute relied on. We think the true construction of the word, "mentioned," in article 5345, is not designation by name, but means, referred to or having in mind, and as indicating that the child was in her memory and that her will was made with reference to its possible existence and early birth and that it was not overlooked or forgotten. In other words, the true interpretation of the statute is that it should appear either that provision should be made for the child, or that if no provision was made for such child that it should appear from the will, interpretated in the light of all the circumstances, that the failure to make such provision was not accidental, due to inadvertence or oversight. When, therefore, tested by this rule, which seems to find support in the decisions above quoted and to be intrinsically sound and reasonable, it appears that by the first section of her will Mrs. Pearce devised to her husband, outright, their home place, and after this is done, in the most unequivocal manner, to make assurance doubly sure, she adds: "The same to be held by him in fee simple without condition." By the second clause of her will she likewise devises to her husband her interest in the land in controversy and adds, "To be held and enjoyed by him in absolute right and fee simple." By the third item, which we have not yet quoted, she lays upon the husband the duty and obligation of paying her mother the sum of $200 annually, until her death. Then in item 4 of her will she devises her one-fourth interest in the homestead lots of her father's estate, first, to her mother, and, in case of her death previous to her own, to her two sisters, and then provides, "This section is to null and void in case of living issue born of my body." When it is remembered that by the terms of this will she was making such explicit and unequivocal provision for her husband; when she was making provision for the payment of $200 annually, to her mother, and devising to her and to her sisters her interest in the old homestead with the saving clause, "To be null and void in case of living issue born of my body," how can it be doubted that she had in mind the almost certainty, according

to nature, that within a few weeks there would be issue born to her and that all these provisions of her will were made with this in mind and with reference to the certainty that a child would be born to her. Naturally, in her condition, in respect to her firstborn, she would be alternately in a state of exaltation over the child soon to arrive and in fear of the peril of her coming travail. It was a fact, based on the experience of all her sex, to which she could not close her eyes, and of her recognition of this fact her will contains the most certain and conclusive evidence. This will she had a right to make, and unless it should be set aside and broken down by law, based upon its fair interpretation under the light of conceded facts, it ought to stand.

We have not deemed it necessary to decide whether the will might not be upheld on the ground that provision had not in fact been made therein for the afterborn child.

We have concluded, under the state of the record as it comes to us, that there was no revocation and that the will should be upheld. It is therefore ordered that the judgment of the Court of Civil Appeals be and the same is hereby reversed and that the judgment of the District Court is affirmed.

*Reversed and judgment of District Court affirmed.*