HUNTING et al. v. JONES. (No. 7021.)*

(Court of Civil Appeals of Texas. Galveston. Jan. 21, 1916. Rehearings Denied Feb. 10, 1916.)

1. COMMON LAW ⬤⟿12—ADOPTION—EFFECT.

Under the statute first adopted in 1840 (Acts 1840, p. 3), providing that the common law of England so far as it is not inconsistent with the Constitution and laws of the state shall, together with such Constitution and laws, be the rule of decisions, and continue in force until altered or repealed by the Legislature, the rule in Shelley's Case became and still is an integral part of the law of the state.

[Ed. Note.—For other cases, see Common Law, Cent. Dig. § 10; Dec. Dig. ⬤⟿12.]

2. WILLS ⬤⟿608—CONSTRUCTION—NATURE OF ESTATES DEVISED—"HEIRS BY HIS PRESENT WIFE."

A will gave the testator's daughter A. certain real estate for life, and at her death to revert to her bodily heirs equally. It also gave certain real estate to a son for and at his death to revert to his "heirs by his present wife," provided that such wife should during her lifetime have a homestead in the property. It provided that if the daughter or the son died without any surviving heirs, such property should go to the testator's other heirs equally. It provided for certain payments to another daughter J., and di-

rected that if she died prior to the time of payment, the specified amounts should be set apart for her bodily heirs, and if she left no bodily heirs, should revert to the testator's other heirs equally. The final paragraph provided that 15 years after the testator's death one-half of the funds in the hands of the executors should be paid to the testator's wife, and the remainder distributed equally between his children or their heirs, the heirs to take such part as the father or mother would have been entitled to had they been living, if any of the children should not be living. Held, that under the rule in Shelley's Case the son took a fee-simple title to the property devised to him, as the phrase "his heirs by his present wife" created under the common law a fee tail special which, by statute, is enlarged to a fee-simple estate, and there was nothing in the other provisions of the will to show that the word "heirs" was used in other than its technical and legal sense, especially as even conceding that the final paragraph used the words "heirs" and "children" interchangeably, the devises to the son and the daughter A. were to be construed by virtue of the paragraphs expressly relating thereto.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1372–1378; Dec. Dig. ⬤⟿608.]

3. WILLS ⬤⟿495—CONSTRUCTION—"HEIRS"— "HEIRS OF THE BODY" — "HEIRS OF THE BODY MALE" — "HEIRS BY HIS PRESENT WIFE."

The words "heirs," "heirs of the body," "heirs of the body male," and "heirs by his present wife" are all words or terms of limitation, and have a well-defined and fixed meaning in law and, as respects real estate, must, when not explained by other words or by the context, always be understood in a technical sense.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1061–1064; Dec. Dig. ⬤⟿495.

For other definitions, see Words and Phrases, First and Second Series, Heirs; Heirs of the Body; First Series, Heirs Male of his Body.]

4. WILLS ⬤⟿608(3)—CONSTRUCTION — NATURE OF ESTATES CREATED.

When there is a devise to a person for life with remainder at his death to his heirs, whether the remainder be limited to general heirs, heirs of the body general, or heirs of the body special, the fee-simple title vests in the first taker.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1374, 1378; Dec. Dig. ⬤⟿608(3).]

5. WILLS ⬤⟿440 — CONSTRUCTION — ASCERTAINING INTENT.

A testator's intention must be gathered from the context of the will and the language used to express his intention.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 956; Dec. Dig. ⬤⟿440.]

6. WILLS ⬤⟿456—CONSTRUCTION — MEANING OF LANGUAGE USED.

It must be assumed in construing a will and ascertaining the intention of the testator that he used the language of the will in its usual and ordinary sense, unless it clearly appears from the will that he used it in a different sense.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 974; Dec. Dig. ⬤⟿456.]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Trespass to try title by W. E. Jones against Mrs. Augusta Hunting and others. Judgment in favor of plaintiff, and defendants appeal. Affirmed.

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Application for writ of error pending in Supreme Court.

W. O. Huggins, of Houston, for appellants Augusta Hunting and others. Chas. O. Guynes, of Houston, for appellant M. T. Jones, Jr. Thos. H. Stone, of Houston, for appellee.

LANE, J. This suit was brought by W. E. Jones against Mrs. Augusta Hunting, Mrs. M. T. Jones, Miss Jeanette Jones, M. T. Jones, Jr., a minor son of plaintiff, and John Goodwin Locke, a minor son of Mrs. Hunting, in the ordinary form of trespass to try title to certain various and sundry tracts of land which plaintiff alleges were devised to him by the will of his father, M. T. Jones, deceased. It may be said that the essential or main purpose of this suit is to obtain a judicial interpretation of the will of M. T. Jones, deceased, under which plaintiff, W. E. Jones, claims title to the land sued for.

Appellants contend that the words "his heirs by his present wife, Mary B. Jones," in section 4 of said will, were used by the testator in the sense of "his children by his present wife," and that having been so used, a life estate only to the land sued for, being the same devised by said section 4 of said will, passed to W. E. Jones by said will, with remainder to such children as were or might be born to him by his present wife, and therefore the words used were words of purchase, and not of limitation, and had the effect to pass the title to such children of W. E. Jones as were or might be born to him by his present wife, and that therefore such provision in said will does not come within the rule in Shelley's Case.

On the other hand, appellee Jones contends that when considered in connection with the word "heirs," as used in all the other sections of said will, said words mean such of his heirs, his children, his grandchildren, his great grandchildren, etc.; that the word heirs, as used in section 4 of said will, has a well-defined, technical, and legal meaning, and that there is nothing in the will, as an entirety, to lead to the conclusion that the testator used such words in any other sense, and therefore said section 4 of said will comes under the rule in Shelley's Case, and the effect of said section was to convey to said W. E. Jones a fee-simple title to the land sued for.

The case was submitted to the court without the intervention of a jury upon an agreed statement of facts, which shows that the will introduced in evidence was the last will of M. T. Jones, deceased; that it has been probated; that M. T. Jones left surviving him his wife, Mrs. M. T. Jones, his daughter, Mrs. Augusta Locke, who later married Hunting; his daughter, Jeanette Jones; his son, W. E. Jones, plaintiff herein; a grandson, M. T. Jones, Jr., defendant herein, a son of plaintiff, W. E. Jones; a grandson, John Goodwin Locke, a son of Mrs. Augusta Hunting; his brother A. L. Jones; two neph-

ews, Jesse H. and John Jones; and several nieces and other collateral kindred not named herein; that Mary B. Jones is the wife of plaintiff, W. E. Jones; that the property in controversy was the community property of M. T. Jones, deceased, and his wife at the time of his death; and that Mrs. M. T. Jones has accepted the bequest made to her under the terms of said will. Under such facts judgment was rendered for plaintiff.

That this opinion may be more comprehensive, we here set out so much of the will of M. T. Jones, deceased, as has any bearing on the issues presented by this appeal, as follows:

Section 2. I give and bequeath to my wife, Louisa Jones, to be paid to her out of my life insurance, twenty-five thousand dollars ($25,000.00) inclusive of the amount payable to her by the terms of such policy. I also give and bequeath to her all my bank stock.

Section 3. I give to my daughter, Mrs. Augusta Locke, all of my real estate in Ellis county, Texas, and improvements thereon. To have and to hold during her lifetime, and at her death the property shall revert to her bodily heirs equally.

Section 4. I give to my son Willie E. Jones (with the exception of block 180, in the town of La Porte, and improvements thereon) all my real estate in Harris county, Texas, known as the Deep Water tract, consisting of the property I bought of A. J. Vick and J. H. Burnett, and the improvements thereon, to have and to hold during his lifetime, and at his death the same to revert to his heirs by his present wife, Mary B. Jones (neé Mary B. Gibbs), provided that his present wife, the said Mary B. Jones, shall, during her lifetime, have a homestead of this property to the valuation of ten thousand dollars ($10,000.00), the value to be determined by my executors.

Section 5. Should my eldest daughter, Mrs. Augusta Locke, or my son, W. E. Jones, either or both of them, die without any surviving heirs, I direct that the property above designated for her or him shall go to my other heirs, each sharing alike.

Section 7. I direct that at five years from the date of my death five thousand ($5,000) be paid to my youngest daughter, Jeannette Jones, or invested by the executors as she may direct; ten years from the date of my death I direct that five thousand dollars ($5,000.00) more be paid to her or invested by the executors as she may direct; in fifteen years from the date of my death I direct that five thousand dollars ($5,000.00) more be paid to her or invested by the executors as she may direct, provided should she die prior to the stipulated times of payments and should leave any bodily heirs, this amount shall be set apart for her bodily heirs; should she leave no bodily heirs, then it shall revert to my other heirs equally.

Section 11. I direct that my executors shall appropriate at the proper time five thousand dollars ($5,000.00) to educate my grandson, M. T. Jones, Jr., provided he lives to receive the education.

Section 12. I also direct that my executors shall appropriate at the proper time five thousand dollars ($5,000.00) to educate my grandson, John Goodwin Locke, son of my daughter, Mrs. Augusta Locke, provided he lives to receive an education.

Section 13. At the expiration of fifteen years after my death my executors shall wind up the business of my estate and all funds remaining in their hands not distributed as hereinbefore provided shall be distributed by them as follows: One-half to my wife, Mrs. Louisa Jones (if she be living), and the remainder they shall distrib-

ute equally between my three children, or their heirs; if any of my children should not be living, the heirs to take such part as the father or mother would have been entitled to had they been living. In case my said wife should not be living when the final distribution is made, as above provided, then all of the said property shall be distributed between my heirs as hereinbefore provided for the distribution of the one-half.

Upon the foregoing facts the trial court concluded and found, that the effect of the will of M. T. Jones, deceased, was to vest in plaintiff, W. E. Jones, a fee-simple title to the property sued for by him in this cause, and rendered judgment for him for the same. From this judgment all the defendants have appealed.

In response to a request of defendants, the learned trial judge prepared and filed very able and exhaustive conclusions of the law applicable to the facts proven, which, after a most careful examination of the agreed facts and the able briefs of counsel for all parties, we have not without difficulty, however, concluded announces the law applicable to the case, and, having reached such conclusion, we here substantially adopt the same as our opinion in this case, as follows:

The contest between the parties to this suit arises by virtue of the terms of the will of M. T. Jones, and the sole question involved is whether or not, under the terms of said will, and particularly under the provisions of section 4 of said will, W. E. Jones took the fee-simple title to the property described in said section, or took a life estate only.

The plaintiff, W. E. Jones, contends that by virtue of the provisions of section 4 the fee-simple title to the property therein bequeathed vested in him under rule in Shelley's Case.

The defendants deny that the provisions of section 4, standing alone and disconnected from any other provision of the will, would vest in W. E. Jones the fee-simple title to the property; they contend that the context of will, considered as a whole, indicates with clearness and force sufficient to overthrow the provisions of section 4, that the words of limitation used in section 4 were not used in their legal and technical sense, but in fact mean "children," and not "heirs by his present wife" in a technical sense.

This statement fairly presents the issue of law between the parties.

[1] The act of 1840 (Acts 1840, p. 3) adopting the common law in the then republic of Texas, which act has continued consecutively by virtue of statutory enactments, declares the common law of England, so far as it is not inconsistent with the Constitution and laws of this state, shall, together with such Constitution and law, be the rule of decisions, and shall continue in force until altered or repealed by the Legislature. The rule in Shelley's Case is now, and was then, an integral part of the common law of England, and therefore became an integral part of the law of Texas. It is still as effectively in force in this state, in those cases wherein its application arises, as it was in 1840. Lacey v. Floyd, 99 Tex. 118, 87 S. W. 665.

[2] Without entering into a discussion of the rule in Shelley's Case, and putting aside any consideration of the rule which rests upon the distinction between words of purchase and words of limitation, the question arises here: Do the words in section 4, "to have and to hold during his lifetime and at his death the same to revert to his heirs by his present wife," bring the bequest within the rule in Shelley's Case, and vest in W. E. Jones the fee-simple title to the property therein devised?

[3] The words "heirs," "heirs of the body," "heirs of the body male," "heirs by his present wife" are all words or terms of limitation, and have a well-defined and fixed meaning in law, and "as respects real estate, must, when not explained by other words, or by the context, always be understood in a technical sense and no other." 21 Cyc. 412; also 430–432.

The phrase "his heirs by his present wife" creates, in common law, a fee tail special. The exclusion of estates tail from the system of land tenure and the statutory enlargement in this state of all estates to fee-simple estates in cases in which lesser estates are not expressly limited, give rise to fee-simple estates in all cases in which fee tail estates, whether general or special, would have arisen under the common law. The practical result of this is that in determining the quantity of interest devised the terms "heirs of the body" or "heirs by his present wife" (or any named person) are to be given the same significance and the same effect as if the testator had merely used the term "heirs."

[4] Under the laws and decisions of this state when there is a devise to a person for life, with remainder at his death to his heirs, whether the remainder be limited to heirs general, heirs of the body general, or heirs of the body special, the fee-simple title to the land vests in the first taker. Calder v. Davidson, 59 S. W. 301; Pearce v. Carrington, 124 S. W. 469; Same v. Pearce, 104 Tex. 73, 134 S. W. 210.

It follows from this that, looking alone to the provisions of section 4 of the will of M. T. Jones, the court is of the opinion that the fee-simple title to the land bequeathed vested in W. E. Jones, unless there are other provisions in the will which are so repugnant to the provisions of section 4 of the will as that it will appear clearly and certainly that the testator did not use the phrase "heirs by his present wife" in their technical and legal sense.

It is earnestly insisted by counsel for defendants that looking to the context of the will, and particularly to the provisions of paragraph or section 13 thereof, the testator used the phrase "heirs by his present wife,"

not in its technical and legal sense, but to indicate and to mean "children." They further refer to sections 3 and 4, and also section 7, wherein the bequest is made to his daughter, Jeanette Jones, in which the words "bodily heirs" is used in reference to Jeanette Jones and "my other heirs equally" with respect to the heirs of the testator.

Considering the various sections of the will which defendants propose as nullifying the use of the phrase "heirs by his present wife" in a technical sense, it seems to the court that section 3 of the will making the bequest to Mrs. Locke, wherein the term "bodily heirs" is used, was intended to, and did, embrace all who should be the bodily heirs of Mrs. Locke at her death under the technical interpretation of the term; i. e., the living children, children of deceased children, the children of deceased children of deceased children (grandchildren, great grandchildren), etc., including all lineal descendants who would be entitled by common law to inherit as bodily heirs.

The use of the term "surviving heirs" in section 5, as it relates to section 3, means bodily heirs of Mrs. Locke as last defined; and as it relates to section 4, means the bodily heirs of W. E. Jones by his present wife.

The term "other heirs," used in section 5, means and includes all of those who would have been the heirs of M. T. Jones if he had died intestate; i. e., his wife and children, W. E. Jones and Mrs. Locke being subject by the terms of the provision to exclusion by death without surviving heirs of the classes set out in the devises to them.

It is urged by defendants that by virtue of section 13 the use of the words "mother" and "father" renders the words "heirs" and "children" interchangeable.

Section 13 provides for the distribution, after 15 years, of the estate as follows:

"One-half to my wife, Louisa Jones (if she be living) and the remainder they shall distribute equally between my three children, or their heirs; if any of my children should not be living, the heirs to take such part as the father or mother would have been entitled to had they been living."

The testator provides for the distribution between his wife and "my three children or their heirs." He further provides that if any of the children should not be living, the "heirs to take such part as the father or mother would have been entitled to had they been living." It does not appear to the court that "children" and "heirs" are used interchangeably herein; on the contrary, the testator, refers to "my three children," but provides "if any of them be dead, the heirs take such part as the father or mother would have had they been living." This indicates that the testator desired his estate to descend as in course of inheritance; that is to say, the heirs shall take through their father or mother; i. e., per stirpes, and not per capita.

[5, 6] After a will is written and executed by the testator, his intention must be gathered from the context of the will and the language used to express his intention. If the testator is inapt in the use of language to express his intention, it must nevertheless be assumed, for the purpose of construing his will and ascertaining his intention, that he used the language in its usual and ordinary sense, unless it clearly appears from the will that he used it in a different sense. In the construction of wills it is assumed that the testator meant what he said and said what he meant, and it is not for the court to make him say what the court thinks he should have said, for that would be to make for the testator a will which he in fact did not make for himself.

As the words "heirs," "heirs of the body," "heirs by his present wife," etc., have well-defined, technical, and legal meanings, and as it does not appear to the court from a careful inspection of the will that it is made sufficiently plain from other parts of the will, or from the will as a whole, that the testator did not use the words "heirs by his present wife" in their technical and legal sense, the court is of the opinion that the fee-simple title to the property vested in W. E. Jones.

The court is further strengthened in this opinion by reason of the fact that section 4 makes a specific bequest to W. E. Jones, and takes away from the corpus of the estate the land bequeathed to him and removes it from consideration in the final partition of the estate of M. T. Jones, except in the event that W. E. Jones should die without any "surviving heirs." (Section 5.) The same evident desire of the testator to remove the property bequeathed to Mrs. Locke in section 3 is reflected therein and shows a purpose on the part of the testator to reduce the general corpus of his estate by making said special bequests to W. E. Jones and Mrs. Locke, after which the remainder of the estate shall be divided equally between the heirs of M. T. Jones, of which W. E. Jones and Mrs. Locke were two.

With these facts apparent in the will, we feel constrained to hold that any seeming repugnance therein is removed, and even though under section 13 the testator may seem to have used "heirs" and "children" interchangeably, it nevertheless seems to the court (although not entirely free from doubt and uncertainty) that section 4 of the will, in dealing with a specific bequest and not with reference to the entire estate, must be construed by virtue of its provisions and the provisions in section 5 which follows. Considering, then, these two sections of the will as they relate to the subject-matter therein bequeathed, and as they relate to each other, the court is of the opinion that the intention of the testator, as expressed in the language used by him in said sections, was to give to W. E. Jones the fee-simple title to said property; however, it is unimportant what the intention of the testator may have been; the

controlling factor is what the testator actually did, and the law, assuming that he meant what he said, gives effect to his expressed intention. The consequence, therefore, of a correct interpretation of the will is to vest in W. E. Jones the fee-simple title to the property described in section 4 of the will of M. T. Jones, and, this court so finding, affirms the judgment rendered by the lower court.

Affirmed.

*Application for writ of error pending in Supreme Court.