HUNTING et al. v. JONES. (No. 100–2933.)

(Commission of Appeals of Texas, Section B. Nov. 12, 1919.)

WILLS ⬩⟲608(2)—"HEIRS" USED IN NONTECHNICAL SENSE, SYNONYMOUS WITH CHILDREN.

A will giving a life estate to testator's daughter, remainder to "her bodily heirs equally," and a life estate to a son, remainder to "his heirs by his present wife," and providing that, if either should die "without any surviving heirs," the property "shall go to my other heirs, each sharing alike," construed as using the word "heirs" as equivalent to "children," so that the son took only a life estate, and not a fee under the rule in Shelley's Case.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Heirs.]

Error to Court of Civil Appeals of First Supreme Judicial District.

Trespass to try title by W. E. Jones against M. T. Jones, Jr., and others. A judgment for plaintiff was affirmed by the Court of Civil Appeals (183 S. W. 858), and defendants Augusta Hunting and others bring error. Judgments of district court and of the Court of Civil Appeals reversed, and judgment rendered that plaintiff take nothing by his suit.

W. O. Huggins and Chas. O. Guynes, both of Houston, for plaintiff in error M. T. Jones, Jr.

T. H. Stone, of Houston, for defendant in error.

McCLENDON, J. This suit was brought by W. E. Jones, as plaintiff, against his son M. T. Jones, Jr., and other defendants, in form in trespass to try title, but in fact to determine the sole question whether, under section 4 of the will of M. T. Jones, deceased, the plaintiff acquired the fee to the property in said section devised, or only a life estate therein. The Court of Civil Appeals, First District, held that the rule in Shelley's Case applied, and plaintiff took the fee. 183 S. W. 858.

Eliminating those sections which have no bearing upon the question at issue, the will reads as follows:

"Section 3. I give to my daughter, Mrs. Augusta Locke, all of my real estate in Ellis county, Texas, and improvements thereon, to have and to hold during her lifetime, and at her death the property shall revert to her bodily heirs equally.

"Section 4. I give to my son Willie E. Jones (with the exception of block 180, in the town of La Porte, and improvements thereon) all my real estate in Harris county, Texas, known as the Deep Water tract consisting of the property I bought of A. J. Vick and J. H. Burnett, and the improvements thereon, to have and to hold during his lifetime, and at his death the same to revert to his heirs by his present wife,

Mary B. Jones (née Mary B. Gibbs), provided that his present wife, the said Mary B. Jones, shall, during her lifetime, have a homestead of this property to the valuation of ten thousand dollars ($10,000.00), the value to be determined by my executors.

"Section 5. Should my eldest daughter, Mrs. Augusta Locke, or my son, W. E. Jones, either or both of them, die without any surviving heirs, I direct that the property above designated for her or him shall go to my other heirs, each sharing alike."

"Section 7. I direct that at five years from the date of my death five thousand dollars ($5,000.00) be paid to my youngest daughter, Jeanette Jones, or invested by the executors as she may direct; ten years from the date of my death I direct that five thousand dollars ($5,000.00) more be paid to her or invested by the executors as she may direct; in fifteen years from the date of my death I direct that five thousand dollars ($5,000.00) more be paid to her or invested by the executors as she may direct, provided should she die prior to the stipulated times of payments and should leave any bodily heirs, this amount shall be set apart for her bodily heirs; should she leave no bodily heirs, then it shall revert to my other heirs equally."

"Section 13. At the expiration of fifteen years after my death my executors shall wind up the business of my estate and all funds remaining in their hands not distributed as hereinbefore provided shall be distributed by them as follows: One-half to my wife Mrs. Louisa Jones (if she be living), and the remainder they shall distribute equally between my three children, or their heirs; if any of my children shall not be living, the heirs to take such part as the father or mother would have been entitled to had they been living. In case my said wife should not be living when the final distribution is made, as above provided, then all of the said property shall be distributed between my heirs as hereinbefore provided for the distribution of the one-half."

It is the contention of plaintiff that the expression in section 4, "heirs by his present wife, Mary B. Jones," is used in its technical sense, as meaning the heirs of the body of plaintiff by his said wife, to take in indefinite succession from generation to generation, thereby creating in them an estate tail special, which under the common law is a heritable estate, and therefore inconsistent with a life estate only in the plaintiff. It may be conceded at the outset that, if section 4 stood alone, this contention under the authorities would be correct. Our inquiry, therefore, is directed to the question whether under a fair construction of the entire instrument there is an evident intention of the testator not to use the words in their technical sense.

We have not found any decision by our own Supreme Court where the facts were so closely analogous as to render it controlling in the present case, and we are therefore left to resort to general principles laid down by our courts in arriving at a proper conclu

sion. . The following statement of the rule in Shelley's Case by Chancellor Kent in his Commentaries has been uniformly approved by our Texas courts:

"'When a person takes an estate of freehold, legally, or equitably, under a deed, will, or other writing, and in the same instrument, there is a limitation, by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons, to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate.' * * * This result would follow, although the deed might express that the first taker should have a life estate only. It is founded on the use of the technical words 'heirs,' or 'heirs of the body,' in the deed or the will." Hancock v. Butler, 21 Tex. 808.

We might add that the technical significance referred to in the last quotation is that the expression "heirs," or "heirs of the body," embraces not only a designation of the persons who under the law are to take, but also the character in which they take, namely, as "heirs" or "heirs of the body," by virtue of the relation of heirship—that is, by descent, from which it is reasoned that in order for them to take by descent, or from and under the ancestor, the latter must be first vested with the estate which they are to take. The use of these words, therefore, when given their technical meaning, pre-supposes an intention in the one employing them to create a heritable estate, which is inconsistent with an estate for life only. Therefore the previously granted life estate, however clear the language creating it may be, must be enlarged to give effect to this presumed intention to create a heritable estate in the remaindermen. It is by this process of reasoning that the defenders of the rule contend that its application does not defeat the primary intention of the testator. It would be unprofitable to enter into any discussion upon the merits of this contention. The tenacity with which our American courts have adhered to this rule, especially with regard to the words "bodily heirs," as presupposing an intention to create an estate which has long since been made impossible by statute, may be regarded as singular. The rule, however, is now recognized as a rule of property in this state, and the plain duty rests with the courts to give it effect, where clearly applicable. The rule does not, however, prevent an inquiry into the question whether, from a fair construction of the instrument, the otherwise technical words were in fact employed in a nontechnical sense, and as synonymous with some other words which designate only the persons who are to take. In pursuing this latter inquiry, resort may be had to certain well-established principles of construction.

To paraphrase the language of Hancock v. Butler, above, the leading inquiries to be made are:

What did the testator intend by the terms of the will, and was that intention lawful? The governing rule is that every part of the instrument should be harmonized and given effect to, if it can be done. If that cannot be done, and it is found that the will contains inherent conflict of intentions, then the main intention, the object of the devise being considered, shall prevail. In either event the result arrived at must be a lawful one. In arriving at the intention of the testator, what he had a right to do, and what he did not have a right to do, should be taken into consideration; for it is to be presumed that he knew his rights, unless we find something in the will which leads to a different conclusion. He had the right to give the plaintiff the property absolutely, either with or without reference to his heirs by his present wife. He had a right to give to plaintiff a life estate only, and connect with it a gift of the absolute property, to take effect at the time of plaintiff's death, to persons then in being answering the description of heirs by his present wife then in being. He had no right to create a perpetuity, by which he would tie up the property from alienation longer than a life, or lives, in being, and 21 years. He had no right to entail the property, by giving it to plaintiff and his heirs by his present wife, to take in a line of succession after one another, contrary to the general laws of descent and distribution. He had no right to reduce the estate, conferred on plaintiff, to a life estate, if in the same will he made the heirs of his present wife derive an estate in fee tail special from and through plaintiff, as his heirs by his present wife, by descent. Now, if this will, or its parts, are equally capable of two constructions—one consistent with his having intended to do that which it was lawful for him to do, and one which is consistent with his having intended to do that which it was unlawful for him to do—the former will be adopted. The part of the will which expressly indicates the interest which plaintiff is intended to take is plain, and not even capable of being made dubious: "I give to my son, * * * to have and to hold during his lifetime." If the will went no further, or if the full title to the property had been given, after that, by the same will, over to the heirs of some one else, there could be no doubt that plaintiff took only a life estate.

It is contended that this express intention is overborne, and a greater interest than a life estate was conferred on plaintiff by the mode in which the remainder is bestowed; that is, to his heirs by his present wife. And as above shown, this contention must prevail, unless from other provisions of the will it is shown that the expression "heirs by his present wife" was not used in its technical sense.

We have reached the conclusion that upon a careful reading of the entire will, with such light as the surrounding circumstances may shed, the testator throughout used the word "heirs" in the sense of "children." Generally speaking, the considerations which impel

this conclusion are: The clearly expressed intention in sections 3 and 4 to create life estates only; the frequent use of distributive words in connection with "heirs"; the clearly indicated use of "heirs" as a word of purchase in sections 7 and 13; the unmistakable use of "heirs" for "children" in some portions of the will; and the fact that to substitute "children" for "heirs" in every place where it occurs will harmonize all the provisions of the will and manifestly give effect to every expressed intention of the testator; whereas to give "heirs" its technical meaning throughout the will would result in defeating the testator's clearly expressed intention in several respects, would require the rejection of some of the language of the testator, apparently advisedly used, would be manifestly impossible in construing portions of sections 7 and 13, and would render some of the provisions of the will repugnant to each other.

The facts show that at the time of his death M. T. Jones left surviving him his wife, a daughter, Mrs. Augusta Locke, lately Mrs. Augusta Hunting, an unmarried daughter, Jeanette Jones, a son, Willie E. Jones, the plaintiff, a grandson, the defendant M. T. Jones, Jr., a son of plaintiff, and a grandson, John Goodwin Locke, a son of Mrs. Augusta Locke, besides collateral kindred.

Sections 3 and 4 of the will make specific bequests to his married daughter and son, Mrs. Locke and plaintiff, each of whom had a son then living. Section 5 must be construed as complemental to sections 3 and 4. Otherwise they are in hopeless conflict, and the former or the latter must fall. In these three sections of the will the word "heirs" is used four times. In section 3 a life estate is given to Mrs. Locke, with remainder to "her bodily heirs *equally*." In section 4 a life estate is given to William E. Jones, with remainder to "his heirs by his present wife." In section 5 it is provided that, if either Mrs. Locke or plaintiff should die "without any surviving heirs," the property bequeathed to them, respectively, "shall go to my other heirs, *each sharing alike*." If the word "heirs" is used in each of these four quotations in its technical sense, then it is quite evident that section 5 is in conflict with sections 3 and 4, in which event section 5 would have to fall, or the expressions "bodily heirs equally," in section 3, and "heirs by his present wife," in section 4, would have to be enlarged, so as to include all the heirs of Mrs. Augusta Locke and plaintiff. Such a construction, we think, is untenable, although cases may be found supporting the proposition that a limitation over will enlarge a previous limitation. It is quite plain that the expression in section 5, "die without any surviving heirs," was intended to be complemental to the expressions "bodily heirs," in section 3, and "heirs by his present wife," in section 4. This construction will harmonize the three sections in the particular in question, and palpably conform to the intentions of the testator. To reach this conclusion, however, the expression "without any surviving heirs," in section 5, must be given a meaning other than the expression "heirs" ordinarily and technically has.

Again, the qualifying distributive word "equally," added to "bodily heirs" in section 3, must necessarily be disregarded, if "bodily heirs" is given any other meaning than "children." Otherwise, violence would be done to a well-established presumption thus expressed in Hancock v. Butler, above:

"It is presumed it would be difficult to find one case where a man had expressly given his property, to all his descendants, to take per capita—children, grandchildren, great-grandchildren, etc. The general sense of American mind, as exhibited in deeds, wills, and in statutes of descent and distribution, is that it is proper to give property to children, grandchildren, etc.; they taking per stirpes."

But we are not required to resort solely to this well-settled presumption. That the testator did not intend that his "heirs," technically speaking, should share equally, is shown where, in section 13, he provides that his children, if living, shall share equally, and the "heirs" of such as shall have died shall "take such part as the father or mother would have been entitled to."

The limitation over in section 5 is likewise qualified by distributive words, although the language is not the same: "To my other heirs, *each sharing alike*." Here again we must disregard the distributive words, "each sharing alike," if the expression "my other heirs" is to be construed other than as meaning "children."

Section 7 of the will makes provision for the testator's unmarried daughter, providing that $5,000 be paid to her by the executors 5, 10, and 15 years after the testator's death, with the proviso that, should she die prior to the stipulated times of payment and leave any "bodily heirs," the amount shall be set apart for her "bodily heirs"—in default of which, "it shall revert to my other heirs *equally*." It is difficult to conceive, whatever may have been the intention of the testator, that he used the expression "bodily heirs" in this section as words of limitation. This is not a bequest of real estate, nor of any share of the corpus of the testator's estate. No attempt is made to create an antecedent estate with a limitation over. It is an absolute gift of three separate sums of $5,000, to be delivered at stated periods. The "bodily heirs of Jeanette," whatever was meant by that term, under no theory could take by inheritance from their mother. No interest is given to Jeanette in any of the specific sums, unless she be living at the time they are to be paid. If she be living at said time, the sums are to be paid to her abso-

lutely, without remainder. Clearly the proviso in favor of her "bodily heirs" is the creation of a conditional bequest by purchase, and "bodily heirs" in this connection could not consistently mean anything other than children or descendants.

In the limitation over in this section, we are again met with the expression "to my other heirs *equally*," in which "equally" must be rejected, or "heirs" interpreted as "children."

Section 13 of the will disposes of the balance of the estate, referred to as funds in the hands of the executors at the expiration of 15 years from the death of the testator. This is given, one-half to the testator's wife, if she be living, and the remainder to be distributed "*equally* between my three children, or their heirs; if any of my children shall not be living, the heirs to take such part as the father or mother would have been entitled to had they been living." The word "heirs" in this quotation is clearly not used in its technical sense. This is true for the reasons already assigned in regard to the provisions of section 7. The property to be distributed consists of funds, which we take to mean personal property. The children, if living, are to take absolutely. No remainder, either vested or contingent, is attempted to be created in favor of their heirs. The heirs take, if at all, directly and absolutely by purchase at the time of distribution. It is also clear, we think, that "heirs" was used in the sense of "children," because it is provided that the heirs are to take such part as the "father or mother" would take, if living. The last clause of this paragraph provides for the vesting of the wife's half, in case she should not be living at the time of the distribution, in which event it was to be "distributed between my heirs as hereinbefore provided for the distribution of the one-half." No other construction could be given to the expression "my heirs" in this quotation than that it means the same persons who are designated to take the remaining half as before mentioned in said paragraph. Such persons are the three children of the testator, if living, and, if not living, then their heirs as above construed. Here, again, the word "heirs" is clearly a word of purchase, and not of limitation. By substituting "children" for "heirs," the intention of the testator, which is evident, is accurately expressed.

Another circumstance, which, to our mind, conclusively shows that "heirs" is uniformly used as synonymous with "children," is found in a comparison of the various clauses providing for limitations over. There are three of these limitations over, namely, in section 5, "to my other heirs, *each sharing alike*;" in section 7, "to my other heirs *equally*;" and in section 13, "to my heirs as hereinbefore *provided for the distribution of the one-half.*" No basis is suggested for imputing an intention in the testator that these several contingent remainders and devises should pass to different persons or classes of persons. In the limitation in section 13, as we have above seen, "heirs" is manifestly used as "children"; whereas, in sections 5 and 7 the distributive qualifying words strongly indicate a like use of "heirs." When the three limitations are considered in their interrelation, this conclusion seems irresistible.

If the word "children" be substituted for the word "heirs" wherever it occurs, the entire will in all its parts is harmonized, and the manifest intentions of the testator are carried out. In no provision in the will where the word "heirs" is used can it be given its technical meaning, without disregarding some one or more of the qualifying words, or doing violence to the clear intention of the testator, or making the provisions of the will repugnant to each other. To give "heirs" its technical meaning in any place where used, it is necessary to modify it by other provisions of the will, or to reject some one or more qualifying words, or both.

We conclude that the judgments of the district court and Court of Civil Appeals should be reversed, and judgment rendered that plaintiff, W. E. Jones, take nothing by his suit.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.