### M. T. SCOTT ET AL. v. HARRIS BRIN.

Decided January 11, 1908.

**1.—Deed—Rule in Shelley's Case.**

Under the rule in Shelley's case, a deed which recites a valuable consideration and that the grantor does thereby "grant, sell and convey unto the said B. H. Scott for the period of his natural life and after his death to the heirs of his body, lawfully begotten, said property," and in which the habendum clause reads "To have and to hold the above described premises. . . . unto

the said Scott for the term of and during his natural life, as aforesaid, and after his death to the heirs of his body, lawfully begotten, etc.," vests a fee simple title in the grantee.

**2.—Same.**

If it appears from a deed or will that the words "heirs of his body" are used to designate the children of the grantee or devisee, effect will be given to that intention and the estate conveyed or bequeathed will be limited to the life of the grantee or devisee with remainder in fee to the children designated.

Appeal from the District Court of Kauffman County. Tried below before Hon. J. E. Dillard.

*William H. Allen,* for appellants.—The effect of the deed under which plaintiffs claim title was to convey to B. H. Scott a life estate and the plaintiffs a vested remainder of three-sevenths undivided interest. Hancock v. Butler, 21 Texas, 804; Berry v. Spivey, 97 S. W. Rep., 511; Smith v. Brown, 66 Texas, 543; Laval v. Staffel, 64 Texas, 370; Kesterson v. Bailey, 80 S. W. Rep., 97; Mason v. Ammon, 117 Pa. St., 127; Earnhart v. Earnhart, 127 Ind., 397; 22 Am. St. Rep., 652; Butler v. Huestis, 68 Ill., 594; 18 Am. Rep., 589; Myers v. Anderson, 1 Strob. Eq., 344; Carrigan v. Drake, 36 S. C., 354; 15 S. E. Rep., 339; Tyler v. Moore, 42 Pa., 374; 17 Atl. Rep., 216; Jackson v. Jackson, 127 Ind., 346; 26 N. E. Rep., 897.

*T. L. Stanfield* and *Robt. L. Warren,* for appellee.—The effect of the deed from B. M. Childress to B. H. Scott was to convey to said B. H. Scott, the immediate vendee, a fee simple title to the property therein described. 4 Kent. Com., 215, 227, 456; Tied. Real Prop., 433, 437; 2 Wash. Real Prop., 273; Brown v. Bryant, 44 S. W. Rep., 399; Hancock v. Butler, 21 Texas, 804; Berry v. Spivey, 97 S. W. Rep., 511; Simonton v. White, 53 S. W. Rep., 339; Rodgers v. Burchard, 34 Texas, 442; Hawkins v. Lee, 22 Texas, 547; O'Brien v. Hilburn, 22 Texas, 624; Calder v. Davidson, 59 S. W. Rep., 301; Taylor v. Cleary, 29 Grat., 451; Watkins v. Pfeiffer, 92 S. W. Rep., 562; Lacy v. Floyd, 87 S. W. Rep., 665; Speight v. Askins, 102 S. W. Rep., 74; Am. Dig. Title, Limitations, 413, 419 to 421; 15 Am. & Eng. Ency. Law (2d ed.), 320; 25 Am. & Eng. Ency. Law (2d ed.), 639, 640.

TALBOT, ASSOCIATE JUSTICE.—This suit was instituted by the appellants against the appellee to recover a three-sevenths interest in a brick storehouse and lot situated in the city of Terrell, Texas. After alleging in the usual form of an action of trespass to try title, that the plaintiffs were, on the 26th day of October, 1905, lawfully seized and possessed of said property, and were on that date wrongfully dispossessed of the same by the defendant, etc., the petition further alleged, in substance, that B. M. Childress was the common source of title; that on the 10th day of December, 1885, the said Childress conveyed said premises to B. H. Scott for the term of and during his natural life, and after his death to the heirs of his body,

lawfully begotten, in fee simple; that the said B. H. Scott died on the 26th day of October, 1905, leaving only seven heirs of his body, lawfully begotten, namely, these plaintiffs and four others; that upon the death of the said B. H. Scott, plaintiffs became the owners in fee simple of three-sevenths undivided interest in said storehouse and lot; that on May 18, 1893, the said B. H. Scott, joined by plaintiffs, who were three minors and his other four children, who were of full age, executed a deed to the defendant, Brin, purporting to convey to him said premises; and that said Brin, by virtue of said deed, was asserting title to the whole of said premises and withholding the same from plaintiffs. It was further alleged that plaintiffs were, at the time of the execution and delivery of said deed to the said Brin, minors and incapacitated to make the same; that plaintiff, R. R. Scott, was born April 25, 1874, the plaintiff, B. H. Scott, August 5, 1876, and the plaintiff, M. T. Scott, January 21, 1879; that plaintiffs received no consideration whatever for executing said deed to defendant, and that defendant knew at the date thereof that plaintiffs were minors and that they received no consideration for said deed; that the entire consideration paid by defendant for said house and lot was paid to B. H. Scott, their father, and was grossly inadequate; that immediately on reaching their respective years of majority the plaintiffs repudiated said deed of conveyance to defendant and declared to him their intention to disaffirm it, and that they had at all times since becoming of age repudiated and disaffirmed said deed and asserted their title as remaindermen to their said interest in said property; that they had at all times declared to the defendant and openly to all parties that upon the death of their father, B. H. Scott, the life tenant, they would demand their interest in said property and if not delivered they would sue to recover it. Plaintiffs further allege that the consideration paid to the said B. M. Childress for the property in question was funds derived from and donated by the father of the said B. H. Scott and grandfather of plaintiffs, whose wish and intention was that said premises should be so deeded that the said B. H. Scott should have only a life estate therein and at his death said premises should pass in fee simple to the children of said B. H. Scott, which was known to defendant Brin.

To the plaintiffs' petition the defendant filed and urged a general demurrer and special demurrers, among others, to the following effect: That said petition shows on its face that the plaintiffs are now estopped from cancelling the deed to defendants because it appears therefrom that they remained silent and acquiesced therein and suffered said deed to stand without any act of disaffirmance for seven, nine and twelve years respectively after they had arrived at the years of maturity; that said petition shows on its face that the plaintiffs are barred by the statute of three, four, five and ten years limitation; that the allegations of plaintiffs' petition and the deed from B. M. Childress to B. H. Scott, attached to said petition and made a part thereof, and under which plaintiffs claim, show that the fee simple title to the premises involved in the

suit was conveyed to and vested in said B. H. Scott, and by said Scott's deed to defendant passed to and became vested in defendant.

The general demurrer was overruled, but the special demurrers, except the one last mentioned, were sustained by the trial court and plaintiffs declining to amend, their suit was dismissed and they have appealed.

The defendant, however, excepted to the court's action in overruling his special demurrer to the effect, that plaintiffs' petition showed on its face that the fee simple title to the property in controversy was vested in plaintiffs' ancestor, B. H. Scott, by the deed from Childress to him, and passed to defendant by the said Scott's deed dated May 18, 1893, and presents that question by a proper assignment of error for review. If this assignment should be sustained, appellants have no cause of action and the court's action in dismissing their suit was correct without regard to his rulings upon the other phases of the case, of which appellants complain, and need not be decided.

The question then is, did the deed from B. M. Childress to B. H. Scott, dated December 10, 1885, vest in the said Scott only a life estate to the property in controversy or a fee simple title by operation of the rule in Shelley's case? The deed recites a consideration of six thousand, seven hundred and fifty dollars paid, and that the grantor does thereby "grant, sell and convey unto the said B. H. Scott for the period of his natural life and after his death to the heirs of his body, lawfully begotten, said property." The habendum clause of the deed reads thus: "To have and to hold the above described premises—unto the said Scott for the term of and during his natural life, as aforesaid, and after his death to the heirs of his body, lawfully begotten, etc." The rule in Shelley's case, as stated by Mr. Preston and quoted by Mr. Kent in the fourth volume of his Commentaries, page 240, is as follows: "When a person takes an estate of freehold, legally or equitably, under a deed, will or other writing and in the same instrument, there is a limitation, by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons, to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate." In Hancock v. Butler, 21 Texas, 804, it is stated: "This result would follow, although the deed might express that the first taker should have a life estate only. It is founded on the use of the technical words 'heirs' or 'heirs of his body' in the deed or will." The language of the deed under consideration, and upon which the question for decision turns, seems to clearly bring the case within the above rule. The technical words "heirs of his body" are employed by the grantor to describe the persons who should take after the death of B. H. Scott, and, if not qualified by other provisions or language of the deed, vested in the said Scott an estate in fee simple. Such words, without qualification, are words of "limitation" and not of "purchase," and entitled the grantee, B. H. Scott, to the whole estate. "All the modern cases contain one uniform language and declare that the words

'heirs of the body,' whether in deeds or wills, are construed as words of limitation, unless it clearly and unequivocally appears that they were used to designate certain individuals answering the description of heirs at the death of the party." 4 Kent, p. 252.

If it appears from the instrument that the words, "heirs of his body," are used to designate the children of the grantee or devisee, effect will be given to that intention and the estate conveyed or bequeathed will be limited to the life of such grantee or devisee with remainder in fee to the children thus designated. If it does not so appear, the law gives to such language the effect of conferring upon the named grantee or devisee an absolute estate. In the case of Lacey v. Floyd, 99 Texas, 112, our Supreme Court had under consideration the following provision of a will: "I will to Amos B. Steele all the land that I bought of Joseph Nichols, also the land that I bought of Mr. Patterson, to have and to hold during his natural life, and at his death to his lawful heirs." In the absence of language qualifying and limiting these words it was held that the rule in Shelley's case applied, and that the provision of the will quoted vested in Amos B. Steele a fee simple title to the land. It was also held in that case, that the words "at his death" furnished no interpretation of the term "lawful heirs." Illustrative of the principle that, where the technical words "heirs of his body" or "bodily heirs" are qualified and limited by other language of the instrument and showing the same to have been used to designate the children of the grantee or devisee, the estate conferred will be limited to the life of such grantee or devisee with remainder in fee to the children, is the case of Simonton v. White, 93 Texas, 50. In that case "the consideration expressed in the deed from Gentry to Mrs. Simonton is the affection of the grantor for his daughter and her four children, naming them, and the duty owed to them." The deed provided "that the land and property thereby conveyed was not to be traded or sold, but the produce of the same should go to the support of Mrs. Simonton and her family during her natural life and at her death to be equally and impartially divided between her bodily heirs." It was held, in view of the language used expressing the purpose and intent of the grantor, that Mrs. Simonton took an estate for life only with remainder in fee to her children after her death. In discussing the question the court said: "If 'bodily heirs' means the heirs of Mrs. Simonton in an indefinite line of succession, the provision quoted is void; the declared consideration is without meaning, and the clause forbidding alienation becomes inoperative. Governed by the rule in Shelley's case, the requirement that the produce of the property should be applied to the support of the daughter and her children amounts to a false pretense, and the direction that, after Mrs. Simonton's death, the property should be equally divided between her bodily heirs, is impossible of execution and absurd. If, however, the words 'bodily heirs' as used in the deed be construed to mean the four children named or to include with them those subsequently born, the consideration expressed and the declared purposes harmonize, the prohibitory clause is not only valid, but necessary for the preservation of the trust created

and the provision for common support responds to the declared paternal affection and duty. Under this construction, impartial distribution of the property at the termination of the life estate is both possible and just. The rule in Shelley's case, if applied to this instrument, destroys all of the benefits which were intended to be conferred upon the children and renders the instrument incongruous and contradictory in all of its parts, while the enforcement of the well defined intention of the grantor harmonizes every provision of the deed." It was distinctly said, however, in that case that, "if Gentry used the words 'bodily heirs'" in their technical sense, the children would be excluded from the benefits of the conveyance; that if not qualified, such words would vest in Mrs. Simonton an estate in fee simple.

There is no provision or language in the deed from B. M. Childress to appellants' ancestor, B. H. Scott, qualifying the words "heirs of his body," in the sense required, or showing in any manner that they were used otherwise than in their technical sense. The language "for and during his natural life" and "after his death" has no such effect. Lacey v. Floyd, *supra.* Nor can the words "lawfully begotten" immediately following "heirs of his body" be construed as limiting or restricting the application of the latter to the children of B. H. Scott. It follows that by the terms of said deed a fee simple title to the property sought to be recovered was vested in the said B. H. Scott and by his deed passed to appellee. This being true, appellee's special demurrer No. 6, which was over-ruled, should have been sustained, and it does not matter that the trial court, upon some other ground dismissed appellants' suit, the dismissal was correct and the judgment to that effect is affirmed.

*Affirmed.*

Writ of error refused.