CRAIG et al. v. McFADDEN et al.
(No. 1698.)

(Court of Civil Appeals of Texas. Texarkana.
Dec. 28, 1916. Rehearing Denied
Jan. 4, 1917.)

1. WILLS ⊙⟶506(1)—CONSTRUCTION—"HEIRS."

The word "heirs" as a word of description will not always be taken in its strict legal significance, where testator's intention to use it in a different sense is shown, and it may be used to describe those who answer to the description at a specified time after testator's death.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1090; Dec. Dig. ⊙⟶506(1).

For other definitions, see Words and Phrases, First and Second Series, Heirs.]

2. WILLS ⊙⟶524(6) — CONSTRUCTION — REMAINDERS—HEIRS.

Where testator devised his estate to his wife for life with full power of disposition and the remainder, "if any," at her death to be divided into two moieties, one to his "heirs" and one to his wife's "heirs," the word "heirs" referred in both cases to those answering the description at his wife's death, and distribution in view of Rev. St. 1911, art. 2468, to be per capita; such heirs taking a contingent and not a vested remainder upon death of the wife.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1122; Dec. Dig. ⊙⟶524(6).]

Appeal from District Court, Smith County; R. M. Smith, Judge.

Suit to construe a will by Mrs. Annie McFadden and others against Mrs. Lelia Craig and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

J. W. Craig, of Dallas, for appellants. J. M. Edwards, of Tyler, for appellees.

HODGES, J. In January, 1900, T. P. Smith died, leaving a will of which the following is a copy as to its material provisions:

"First. I nominate and appoint my beloved wife, Mary Bell Smith, sole executrix of this, my last will, and direct that no bond or other security of any kind shall be required of her as executrix.

"Second. It is my will that no other action shall be had in the county court pertaining to estates, or in any other court, in the administration of my estate, than to prove and record this will and to return an inventory and appraisement of my estate.

"Third. I desire that all my just debts and funeral charges shall by my said executrix be paid out of my estate as soon after my decease as shall by her be found convenient.

"Fourth. I direct that one thousand dollars be set aside and appropriated out of my estate to erect tombstones or monuments over my grave and over the grave of my said wife, and to enclose the same with suitable fence, such part of the same to be by my executrix, as she may think proper, used during her lifetime to erect tombstone or monument over my grave and to enclose the same, and the balance to be used after her death to erect tombstone or monument over her grave and to enclose the same.

"Fifth. It is my wish and desire that my beloved wife be properly supported and cared for during her lifetime and that she be provided with every convenience and comfort, and to this end I give and bequeath to my beloved wife, Mary Bell Smith, during her lifetime, all the rest and residue of my separate estate, if any, and all the rest and residue of the community estate of myself and my wife, as well as her separate estate, if any, to be by her managed and controlled, for her own sole benefit, use and enjoyment during her lifetime, and at her death or so soon thereafter as shall be found convenient, I direct that all the rest and residue of my separate estate, if any, and all the rest and residue of our community estate, and my said wife's said separate estate, if any, all treated, inventoried and consolidated as one estate, be divided into two equal moieties or halves, and that one of said moieties or halves be distributed, according to the laws of descent and distribution of the state of Texas, among the heirs of my said wife, Mary Bell Smith, to the exclusion of my own heirs, and the other remaining moiety or half to be distributed, according to the laws of descent and distributions of the state of Texas, among my own heirs, to the exclusion of my said wife's heirs.

"Sixth. It is my will that my said executrix, my beloved wife, Mary Bell Smith, direct, manage and control each and all of said estates as she may see proper and as may suit her convenience, using her discretion in all things, and to this end I hereby authorize and empower her, my said executrix, to sell and dispose of all or any part of either one of said estates, real or personal, at public or private sale, in any manner that may seem best to her for the management of said estates, and make conveyance of the same."

At the time this will was made, and at the time Smith died, he and his wife each owned separate property and some community property. The separate property of Mrs. Smith exceeded in value that of her husband. They had no children or their descendants at the time the testator died. Mrs. Smith, notwithstanding she owned the larger portion of the property disposed of by the will, acquiesced in its provisions. At the time Smith died, his only heirs besides his wife were two sisters, Mrs. Johnson and Mrs. Shuford, and a niece, Mrs. Craig, the appellant, who was the daughter of a deceased brother of the testator. At the time of the death of Mrs. Smith, which occurred in 1914, Mrs. Johnson and Mrs. Shuford, the two sisters of the testator, were both dead, but were survived by a number of children, who are the appellees in this suit. In the partition of the estate, the heirs of Mrs. Smith made a satisfactory division of that half bequeathed them, and they are in no way connected with this controversy. But in the division of that moiety left to the heirs of the testator a controversy arose as to how the distribution should be made—whether per capita or per stirpes. The appellees contended that their portion of the estate should be distributed per capita; that all of the heirs, being nieces and nephews of the testator, should share equally in the division. The appellants insisted that under a proper construction of the will Mrs. Smith took only a life estate, and that the remainder vested in the heirs living at the death of the testator; that the children of Mrs. Shuford and Mrs. Johnson took only such portions of the moiety left to the

heirs of the testator as their parents would have taken had they been living at the time the distribution was to be made. In other words, the appellants contend that the heirs of the testator took a vested remainder at the time of his death; while the appellees insist that they took only a contingent remainder, and that the heirs among whom distribution was to be made were to be determined as of the time when the life tenant died.

The trial court in construing the will held that the heirs of the testator were those living at the time Mrs. Smith died, and rendered a judgment making an equal distribution among all of the nephews and nieces interested in that moiety of the estate.

The only complaint made on this appeal is that which assails the judgment as an erroneous construction of the will upon the issue above referred to. It is conceded by both parties that Mrs. Smith took only a life estate with a power of disposing of any portion which she might elect to sell or convey. The question then is: Did the heirs of the testator who were living at the time of his death take, under the terms of the will, a vested remainder, or was the interest of the heirs then living merely a contingent one, depending upon their being alive at the death of Mrs. Smith, the life tenant? In other words, did the testator mean those answering to the description of heirs at his death, or at the death of his wife? It is unnecessary to here repeat what has so often been defined as a "vested remainder." The rule as to the vesting of remainders is thus stated by Mr. Underhill, in volume 2 of his work on Wills (sections 610, 611):

"610. In the absence of a clear indication of a contrary intention, it is the rule that the words 'heir,' 'next of kin,' or 'relations,' in a devise by the testator to his 'heirs,' 'next of kin,' etc., mean those who are such at his death. This is usually the rule if the devise to the heirs is vested, though an intermediate estate is given which postpones the possession. This interest vests at once, though the testator has given a life estate to another. If a gift by the testator is in remainder to the heirs of another, the testator will be presumed to mean those who are the heirs of that person at the time of his death, and the remainder is therefore contingent during the life of the ancestor.

"611. Under some circumstances, where a life estate precedes a gift in a will to the heirs or next of kin of the testator, it may appear that the testator intended to include among his heirs such persons only as would answer to that description at the termination of the life estate. This question frequently arises where a testator gives a life estate to A., who, at the death of the former, is his sole or nearest of kin, and a remainder in fee to his heirs or next of kin, to vest in possession at the termination of the life estate. It would seem that the facts that the first taker was sole heir of the testator at the time of the testator's death, and that he gave a remainder to his heirs, would indicate that he meant such persons to take as heirs who would have been his heirs had he (the testator) survived the life tenant. This has been held in many cases. Thus, where a testator gave his daughter a life estate with a remainder at his death, 'as though I died intestate,' it was held that he meant as though

he died intestate after the daughter, and consequently that his heirs at that time would take. His daughter, the life tenant, who was his sole heir at his death, was therefore excluded. But where the testator devised land in trust for his son D. 'for and during the term of his natural life,' and on the death of the son the testator gave the said property to 'my (the testator's) own right heirs,' the court held that at once, at the death of the testator, the remainder vested in the then living heirs of the testator. The son and life tenant was the sole heir of the testator at his death, and when he subsequently died intestate and childless, the property went to his heirs rather than to the heirs of the testator living at the death of the son.

"But the cases are by no means harmonious on this point, and several hold that the fact that the previous estate is given expressly to the heir, to whom is also given the remainder, does not prevent the operation of the general rule that the word will be construed as meaning those who are heirs at the death of the testator. Where the testator, in the year 1830, gave land to his daughter and her husband, but, if the daughter should die without issue surviving, the land to go to the heirs of the testator, and the daughter died in 1884 without having had and without leaving issue, the court held that the testator meant those who were his heirs at the time of his death. Hence, as the daughter was sole heir of the testator, she took the fee in either event. So, too, where the testator says, 'I give my property to my legal heirs, in the same proportion as they would have inherited if I had survived my wife,' giving her in the will a life estate, he will be conclusively presumed to mean those who would have been his heirs if he had died immediately after his wife. And where the testator devises land to his wife for her life, and after her death to be equally divided among his and her heirs, he means the estate to vest in those of his heirs who survive the wife."

The object in every instance is to ascertain the intent of the testator; and in the case before us we must look alone to the will itself, for there is no reference in the briefs of either of the parties to any extraneous facts which the court might have considered, unless it be the original rights of the life tenant in the property disposed of.

In this will the testator undertook to bequeath to others not only his own separate right, as well as that portion of the community estate which she had a right to claim at his death. But the language of the will makes it clear that there was no intention on the part of the testator to restrict his wife's dominion over the property during her lifetime so as to interfere with the utmost freedom in its use and enjoyment. The terms "if any," used in the directions for the consolidation and final distribution to be made of the estate after the death of Mrs. Smith, indicate that the testator contemplated that the entire estate might be consumed by her during her lifetime, and that there might be no residue to distribute. This fact is important only in determining when the testator intended the title to the remainders to vest—whether at his death or at the death of his wife. If he contemplated a possibility of there being no property to distribute at the latter date, that circumstance tends to disclose a purpose that no title in remainder

should vest until it had been ascertained that there was property remaining. In this connection, we may also consider the terms in which the remainders are bequeathed. There are no words of present gift or devise, but merely a direction for distribution of any residue of the property left at the death of the life tenant. While the language of the will is sufficient to confer a legacy upon those named as distributees, it is not inconsistent with the inference that the title to the legacy conferred was to begin at the time the distribution was to be made.

[1] Again, it is evident that the title to both of the two moieties in remainder were to vest contemporaneously in the heirs of the testator and those of his wife. It can hardly be said that the testator intended that upon his death one set of heirs should take a vested remainder and the other only a contingent interest. If all of the property had been left in remainder to his heirs after having definitely carved a life estate, there would be much force in the contention that he meant those heirs living at the time of his death. On the other hand, if the devise had been to the heirs of his wife after having carved a life estate, the inference would be equally as strong that he meant the heirs who might be in existence at her death. Strictly speaking, Mrs. Smith, the life tenant, could have no heirs while living. Hence those who were to take a moiety of the remainder as her heirs must, if the legal signification be given to the word "heirs," be those answering to that description at her death. It is true the word "heirs," when used in such instances, will not always be given its strictly legal signification; but this will be done unless their is something which indicates that the testator intended to use it in a different sense. Wallace v. Minor, 86 Va. 550, 10 S. E. 423; 2 Underhill on Wills, § 608. In the case above referred to, the court had under consideration the provision of a will in some respects similar to the one before us. A life estate had been bequeathed to a daughter of the testator, with remainder to her heirs. In discussing the signification which should be given to the word "heirs," the court said:

"The word in question has a well-known technical meaning, and we think technical words are prima facie to be understood in their legal sense, unless, from the contents of the will, it plainly appear that the testator intended to use them in a different sense; and when the testator uses only technical phrases the court is bound to understand them as such, because the court cannot say that he did not know their meaning. But if the testator uses other expressions in other parts of his will, which show he did not mean to use those phrases technically, then the intention must prevail. It is in conformity with these principles that, if the testator uses legal or technical phrases only, his intention should be construed by legal rule; and, if he uses common words, his intention should be regulated according to the common understanding thereof. * * * 'When the word "heirs" is used, not to denote succession, but to describe a legatee, and there is no con-

text to explain it otherwise, it seems that there is no reason to depart from the natural and ordinary sense of the word "heir." '"

If, then, we give the word "heirs" its legal meaning, the conclusion is irresistible that the title to the moiety devised to the heirs of the wife did not vest till her death. It follows, then, that unless the two moieties composing the remainders vested at different times, both were postponed till the death of Mrs. Smith. In holding that the testator intended such postponement, no violence is done to the language of the devise to his heirs; for the term "heirs" may be used as appropriately to describe those who would answer to that description at a specified time after the death of the ancestor, as those who might be such immediately upon his decease. The fact that the nephew and nieces who are treated as his heirs at the time Mrs. Smith, the life tenant, died, could not have inherited from him at the time he died, because their parents were then living, does not militate against that construction. In section 630, 2 Underhill on Wills, the author discusses who are meant by the words "next of kin," and says:

"The power of the testator to attach a meaning to the words 'next of kin' by proper language that will include those persons only who would be his next of kin if he should die intestate at some future period, is undoubted. Thus, where the provision in effect postpones the vesting until a future period, when the property is to vest among the next of kin of the testator, those persons will take as legatees who would have been his next of kin had he died at the date of the vesting, and the persons who are then capable of taking as the testator's next of kin are the proper and lawful claimants, irrespective of the fact that at the death of the testator they were not his next of kin."

In this instance the testator might, if he had chosen to do so, have expressly directed that the remainder of his heirs should be limited to those answering to that description at the date of his wife's death; and it would have gone to the appellees, notwithstanding they could not at the date of his death have taken an estate from him by inheritance. In looking to the use of the term "heirs" for the testator's intention, it is more reasonable to assume that in referring to his heirs he meant those who occupied that relation had he died at or after his wife's decease, than to say that in referring to his wife's heirs he meant those who were only apparently such while she still lived.

There is another feature of this will which should not be overlooked. If the testator had intended that the remainder to be distributed among his heirs was to vest immediately upon his death, then his wife, the life tenant, being herself an heir, would, under the laws of descent and distribution, have taken a fee in all of the moiety set apart to his heirs, if the property were personalty, and to the greater portion of it if it were mixed. Under the peculiar wording of this will, it is evident that the testator did not

intend that his wife's heirs should take more than one-half of what remained at the expiration of the life estate. Yet they would have taken considerably more by inheritance from the wife had she participated in the ownership of the title to the vested remainder. The granting of a like estate with a remainder to the heirs of the testator does not necessarily exclude the life tenant who would also be an heir from participating in the remainder when it vests upon the death of the testator. 2 Underhill on Wills, § 611, and cases cited; also, In re Kenyon, 17 R. I. 149, 20 Atl. 294. If the testator intended to vest a remainder immediately upon his death, and did not intend to exclude his wife from her legal rights as an heir, then the provisions of the will with reference to a division into two moieties and the distribution to be made at her death could not have been complied with. No one answering to the description of an heir can be excluded from the benefits which that relationship confers under the terms of a will, except the will itself; and under the authorities referred to above, as well as those which follow, the mere conferring of a life estate does not alone operate to exclude the life tenant from the benefits resulting from the relationship of heir to the testator.

[2] After considering all of the provisions of this will, we have concluded that it was correctly construed by the trial court; that the heirs referred to who were to take the two moieties of the estate were those who answered to that description at the time Mrs. Smith, the life tenant, died. When that occurred, all of those who were entitled to participate stood in the same degree of relationship to the testator. They were his nieces and nephews, and under article 2468 of our statute took per capita. The following cases, in addition to those previously cited, we think support that conclusion: Forrest v. Porch, 100 Tenn. 391, 45 S. W. 676; Wallace v. Minor, supra; Leonard v. Haworth, 171 Mass. 496, 51 N. E. 7; Womack v. Smith & Tinsley, 11 Humph. (Tenn.) 478, 54 Am. Dec. 51; Welch v. Brimmer, 169 Mass. 204, 47 N. E. 699.

The judgment of the district court will therefore be affirmed.