## TEXAS CO. v. MEADOR et al.
### (No. 415–3890.)

(Commission of Appeals of Texas, Section A. April 18, 1923.)

**1. Deeds ⬦128—Rule in Shelley's Case inapplicable, unless express or implied life estate granted, with limitation to heirs.**

The rule in Shelley's Case does not apply, unless there is an express or implied life estate granted, with limitation by way of· remainder to the heirs.

**2. Deeds ⬦124(1)—Term "heirs" construed in technical sense as word of limitation, unless opposite intent clearly shown.**

The term "heirs," as used in deeds and wills, is construed in its technical sense as a word of limitation, and not of purchase, unless there is a clear intent to give it a different meaning, and a deed to a person and his heirs vests a fee-simple title in the ancestor designated, whether the rule in Shelley's Case has been abolished or not.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Heirs.]

**3. Deeds ⬦124(1)—Word "heirs" construed to mean "children," only where intent clearly appears.**

Though the word "heirs," as used in a deed, is. sometimes construed as meaning "children," an intent to give it that meaning must clearly appear to warrant such·construction, and Rev. St. art. 1106, making common-law words. of inheritance unnecessary in conveying a fee, does not afford a reason for not giving such words their common-law meaning when they are used.

**4. Deeds ⬦124(1)—Deed to woman "and her heirs" held to convey to her fee-simple estate.**

A deed reciting that it was made in consideration of a named sum paid by a woman "and her heirs," and conveying the property to her "and her heirs," the habendum and warranty clauses running to her "and her heirs and assigns," *held* to convey a fee-simple estate to her, for any inference that the word "heirs" was used in the sense of "children," which might arise from the recital that the consideration was paid by the grantee "and her heirs," was overcome by the use of the additional words "and assigns" in the habendum and warranty clauses.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by Esther Meador and others against the Texas Company and others. Judgment for plaintiffs was affirmed by the Court of Appeals· (243 S. W. 991), and the named defendant brings error. Judgment of Court of Civil Appeals and district court reversed, and judgment rendered for plaintiff in error.

H. S. Garrett, of Fort Worth, and Edwin B. Parker and Robt. A. John, both of Houston, for plaintiff in error.

A. R. Eidson, of Hamilton, for defendants in error.

GERMAN, J. February 28, 1902, G. B. Branton and wife, who were the owners of a certain tract of land in Eastland county, Tex. executed and delivered to M. C. Arnold a. deed to same, which, as entered upon the records of that county,·reads as follows:

"That we G. B. Branton and his wife, L. B. Branton, of the county of Eastland, in the state aforesaid, for and in consideration of the sum of eight hundred and five ($805.00) dollars to me·paid by M. C. Arnold and her heirs, have granted, sold, and conveyed, and by these presents do grant; sell, and convey, unto the said M. C. Arnold and her heirs· of the county of Eastland and state of Texas, all that certain parcel or tract of land situated in Eastland county, Texas, known as tract 14, a part of the John F. Sapp survey, and more particularly described as follows: * * * To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereunto in any wise belonging, unto the said M. C. Arnold and her heirs and assigns forever; and we do hereby bind our heirs, executors, and administrators to warrant and forever defend all and singular the said premises unto the said M. C. Arnold and her heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof."

At the time said deed was executed Mrs. Arnold was a widow and had 10 children living. She afterwards married one G. F. Banowsky, and on October 26, 1918, she and her husband executed to Levi McCollum an oil and gas lease covering the land described in the foregoing deed, and which is here involved. For a valuable consideration McCollum transferred to the Texas Company said oil and gas lease October 28, 1918.

This suit was filed by Esther Meador and some of the other children of Mrs. Banowsky, formerly Mrs. Arnold, against Mrs. Banowsky, the Texas Company, and some of the other children as defendants, praying for a partition, and alleging, among other things, that Mrs. Banowsky owned only an undivided one-eleventh interest. in said land, and that the Texas Company owned an oil and gas lease on the interest of Mrs. Banowsky.

The trial court rendered a judgment decreeing that the plaintiffs and the defendants,

other than the Texas Company, were each owners of an undivided one-eleventh interest in the land, and that the lease of the Texas Company covered only the one-eleventh interest of Mrs. Banowsky, ordered a partition, and annulled the lease of the Texas Company, except as to the interest of Mrs. Banowsky. From this judgment the Texas Company appealed, and the Court of Civil Appeals for the Third District affirmed the judgment of the trial court. 243 S. W. 991.

A decision of the case rests upon a proper construction of the deed by Branton and wife to Mrs. Arnold. On the trial the testimony of one J. H. Grogan was admitted over the objections of counsel for the Texas Company, and that testimony is in substance as follows: That Isaac Gann, who was the father of Mrs. Arnold, gave Grogan the money with which to buy the land from Branton, and told him (Grogan) to have the deed made to Mrs. Arnold and her children. Grogan employed a notary public to prepare the deed, and gave him instructions to so prepare the deed as to convey the land to Mrs. Arnold and her children. The deed was written as above set out, and the notary told Grogan that it had the effect of conveying the land to Mrs. Arnold and her children, and that the use of the word "heirs" in the deed was the same as the word "children."

It was admitted that the Texas Company acquired for a valuable consideration the lease contract referred to—

"without any knowledge or notice of any of the above facts, and in good faith relied upon the record title to said land as shown by the deed records of Eastland county, Tex., and believing that Mrs. M. C. Banowsky had a good and fee-simple title to all of said land, and paid rentals under said lease to the said Mrs. Banowsky, without knowledge or notice of such facts, and upon such reliance as aforesaid."

[1] The rule in Shelley's Case has no application to the deed under consideration here. That rule does not apply, unless there is an express or implied life estate granted, with limitation by way of remainder to the heirs. The deed here considered does not purport to convey other than a fee to Mrs. Arnold, or to Mrs. Arnold and her heirs as joint owners. However, there is an ancient rule of the common law which affectuates the same result as if the rule in Shelley's Case did apply.

In arriving at a proper construction of this deed, we must look to the instrument as a whole, and, by reason of the agreement above recited, to it only. The intention of the instrument is manifest, except as to the meaning of the words "and her heirs," which appear in the granting and habendum clauses of the deed, as well as in the clause reciting the payment of the consideration. We are not precluded from an inquiry as to whether the term "heirs" was used in its usual legal and technical sense, as meaning those appointed by law to succeed to the property by inheritance, or in its popular sense as meaning children. If the word be given its technical meaning, it is settled that Mrs. Arnold acquired a fee-simple title to all of the land, described in the deed; but, if it be given the popular meaning, it is equally well settled that Mrs. Arnold took under the deed as a joint owner with her children.

[2] It occurs to us that there is practically nothing in this instrument to indicate that the word "heirs" should be given any other meaning than that ordinarily given it by law, and it is not difficult to arrive at that meaning. Since long prior to the days of Kent the term "heirs," as used in deeds and wills, has been construed in its technical sense as a word of limitation and not of purchase, unless there is a clear intent to give it a different meaning. For this reason it has been consistently held with reference to deeds made to a designated person and his heirs that same vested a fee-simple title in the ancestor designated, unless a contrary intention was clearly apparent, and this is true in states where the rule of Shelley's Case has been abolished, as well as in states, like Texas, where it remains a rule of property.

[3] It is true the word "heirs" is sometimes by construction given the meaning of "children," when from the context and all the circumstances it clearly appears that it was the intention to give it that meaning; but the authorities are almost unanimous in holding that such intention must clearly appear. It is more frequently so construed in wills than in deeds. We call attention to the rule as stated in 18 Corpus Juris, pp. 321 and 322:

"The term 'heirs' may be used in a deed as a word of limitation or as a word of purchase, according to the context. When used without explanatory or qualifying words, it is generally construed as a word of limitation, and a deed of property to a person specified and his heirs will be construed as conveying the fee to such person. An exception exists, however, where a grantor annexes words of explanation to the word 'heirs,' indicating that he meant to use the term in a qualified sense, as descriptio personarum or as a particular designation of certain individuals, and that they and not the ancestor were to be the points or termini from which the succession to the estate was to emanate or take its start, in which case the word may be treated as a term of purchase and not of limitation. But the intent not to use the word in its usual legal meaning must be clear, and where there is no reason to depart therefrom it will be given its technical meaning. So the word 'heirs' may be construed as meaning children, where an intention to that effect is clearly shown by the instrument."

Some of the recent cases by our courts, and particularly the case of Simonton v. White, 93 Tex. 50, 53 S. W. 339, 77 Am. St. Rep. 824, upon which the Court of Civil Appeals

strongly relied in support of its opinion, and the cases of Hopkins v. Hopkins, 103 Tex. 15, 122 S. W. 15, and Hunting v. Jones (Tex. Com. App.) 215 S. W. 959, clearly illustrates the importance given to language of a qualifying and explanatory character contained in the instruments under consideration; but, on the contrary, the case of Lacey v. Floyd, 99 Tex. 117, 87 S. W. 665, forcibly illustrates the rule that the qualifying language must be definite and certain enough to clearly indicate the true intention. While that case involved a consideration of the rule of Shelley's Case, yet it is authority on the proposition here discussed.

Further emphasizing the principle which we think governs in this case, we quote briefly from the note on the rule in Shelley's Case, 29 L. R. A. (N. S.) 1009:

"If a grantor desired to convey a fee to B. at common law, the only way he could do it was by a grant to B. and his heirs. It is true that, at a very early period of English history, this would be deemed a conveyance of a life estate to B., with remainder to his heirs. B. having no power to alienate the estate and defeat the remainder to his heirs; but, long before the rule in Shelley's Case was adopted, such a limitation conveyed the fee to B. If words of inheritance were omitted, the fee would not pass. Therefore, if A. desired to convey a fee to B., he must do so by grant to B. and his heirs. For many years before the rule in Shelley's Case was thought of, there could be no question but that the word 'heirs' in such a grant was a word of limitation. Nevertheless it has often been asserted that a grant to B. and his heirs conveys the fee to B. by reason of the rule in Shelley's Case. In such cases the decision is of course right, but the reason given for it wrong. The rule in Shelley's Case has been abolished in many jurisdictions, but no one would be rash enough to assert that in those jurisdictions, therefore, a grant to B. and his heirs will not convey the fee. If, in a grant to B. and his heirs, at common law, B.'s estate was enlarged from a life estate to a fee by virtue of the operation of the rule in Shelley's Case, it would seem naturally to follow that, upon the abolition of the rule, B. would no longer be deemed to take the fee. No one has even been bold enough to make such a claim. It is a plain misapprehension of the scope of the rule in Shelley's Case to assert that it applies to a conveyance to a person and his heirs or the heirs of the body."

It was because of this very rule that there was adopted at a very early date in the history of our state what is now article 1106 of the Revised Statutes, which is as follows:

"Every estate in lands which shall hereafter be granted, conveyed or devised to one, although other words heretofore necessary at common law to transfer an estate in fee simple be not added, shall be deemed a fee simple, if a less estate be not limited by express words or do not appear to have been granted, conveyed or devised by construction or operation of law."

However, because the use of the old common-law words is not any longer necessary, by reason of the statute, yet this is no reason for not giving them their original common-law meaning when they are used. This identical question was passed upon by the Supreme Court of Missouri in the case of Garrett v. Wiltse, 252 Mo. 699, 161 S. W. 694, which was a case very much like the present one. Upon this point the court in that case say:

"But whilst the use of the word 'heirs' is not now essential in passing a fee to the named grantee, yet its use or that of the words 'and heirs' or 'heirs and assigns' is not to be allowed, under accepted rules of law, as in any wise making doubtful the intent of a grantor to pass a fee simple title to the named grantee. Gannon v. Albright, 183 Mo. loc. cit. 248 et seq., 81 S. W. 1162, 67 L. R. A. 97, 105 Am. St. Rep. 471. Such words, unless controlled or modified by the context, but hark back to and connect themselves with the usages, the learning, and the rules of common law conveyancing. They are highly technical and have a fixed meaning and when used in conveyancing, unless manifestly controlled by the context, as said, are held to be words of limitation and not words of purchase."

[4] Looking at the deed here under consideration, it is not contended that there is any expression contained in it evidencing an intention that the words "and her heirs" shall be given other than their technical meaning, except the recitation to the effect that the consideration was paid by M. C. Arnold *and her heirs*. It is not uncommon for parties other than the grantee to pay a part or all of the consideration for a conveyance of land; and, when this is done, it does not ordinarily change the legal effect of the conveyance. There is no evidence whatever as to the intention of the grantors in the present instance. Certainly it cannot be claimed that the deed itself indicates what may have been the intention of Isaac Gann. While it may be argued that this recitation is a circumstance indicating that it was the intention of the parties to use the words "her heirs" as meaning Mrs. Arnold's then living children, yet this circumstance, in our opinion, is too insignificant to justify a departure from the general rule, which gives to the words used their usual legal and technical meaning, unless a contrary intention is plainly apparent. Singletary v. Hill, 43 Tex. 588; Scott v. Brin, 48 Tex. Civ. App. 500, 107 S. W. 565 (writ denied); Calder v. Davidson (Tex. Civ. App.) 59 S. W. 301 (writ denied); Hughes v. Titterington (Tex. Civ. App.) 168 S. W. 45 (writ denied); White v. Dedmon (Tex. Civ. App.) 57 S. W. 871; Flint v. Wisconsin Trust Co., 151 Wis. 231, 138 N. W. 629, Ann. Cas. 1914B, 70; McMahill v. Schowengerdt (Mo. Sup.) 183 S. W. 605; Wells v. Kuhn (Mo. Sup.), 221 S. W. 19; Adams v. Cary (Mo. Sup.) 226 S. W. 833; Senters v.

Big Sandy Co., 149 Ky. 11, 147 S. W. 750; Meisberg v. Bryant, 184 Ky. 600, 212 S. W. 600.

In the deed as recorded the habendum and warranty clauses ran to M. C. Arnold, her heirs and assigns, and this strongly evidences an intention to vest in her a fee-simple title, which overcomes any inference that might arise by the recitation in the premises of the deed. Johnson v. Morton, 28 Tex. Civ. App. 296, 67 S. W. 790; Wilson v. Woodward, 190 Ky. 326, 227 S. W. 446; Tennison v. Walker (Mo. Sup.) 190 S. W. 9.

We recommend that the judgment of the Court of Civil Appeals and of the district court be reversed, and judgment be rendered in favor of the Texas Company, adjudging its oil and gas lease to include the whole of the tract of land described therein.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for plaintiff in error, as recommended by the Commission of Appeals.