The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

## RICHARDSON v. POE.

### No. 14940.

Court of Civil Appeals of Texas.
Fort Worth.
May 7, 1948.

Holloway, Crowley & Hudson and Edgar H. Keltner, Jr., all of Fort Worth, for appellant.

Lattimore & Couch and J. O. Terrell Couch, all of Fort Worth, for appellee.

McDONALD, Chief Justice.

This suit, brought under the Uniform Declaratory Judgments Act, Art. 2524–1, Vern.Tex.Civ.St., requires a construction of the will of A. J. Dukes, which was probated in 1922.

At the time the will was written the testator's wife was dead. Three children had been born to him. Two of them, Roberta Richardson and Lon S. Dukes, were alive when the will was written, but the other, Lena Dukes Poe, was dead. Appellee A. J. Poe was her only child.

The three beneficiaries expressly named in the will were the testator's living children, Roberta Richardson and Lon S. Dukes, and the grandchild, A. J. Poe. These three were living when the testator died.

To each of the three named beneficiaries was left an interest in designated land. The language of each bequest was similar, except as to the description of the land. Involved in this suit is the land left to A. J. Poe. The provision of the will relating thereto reads as follows:

"To my beloved Grandson, A. J. Poe, I give and bequest the following real estate property, for his use and benefit during his lifetime and at his death to his living bodily heirs, and if none, the property herein mentioned shall revert back to my estate and be divided equally between my bodily heirs: The property intended for him is as follows:"

Lon S. Dukes died after the will was probated, leaving heirs whom we need not name.

A possible construction of the will was that each of the named beneficiaries received only a life estate in the property specifically left to him. For the purpose of cutting off possible remainder interests in the respective properties, certain deeds were executed in the year 1941. Roberta Richardson, the mother of the appellant Jackson M. Richardson, Jr., and the descendants of Lon S. Dukes executed a deed conveying to A. J. Poe whatever estate they owned in the land specifically left to A. J. Poe in the will, and similar deeds were executed in favor of Roberta Richardson, covering the land in which she had a life estate, and in favor of Lon Dukes' children, covering the land in which he was left a life estate. Jackson M. Richardson, Jr., the only child of Roberta Richardson, did not join in any of the deeds.

The case was tried without a jury on an agreed statement of facts, and judgment was to the effect that title to the land in question was vested in Poe as against all persons who might claim any interest by virtue of the will of A. J. Dukes, and in particular it was decreed that Poe should recover the land from Jackson M. Richardson, Jr.

First to be determined is the question whether Poe acquired the fee title to the land under the provisions of the will by reason of the rule in Shelley's Case. If Poe acquired the fee simple title to the land in question by reason of such rule, it follows that there is no remainder estate which could vest in appellant.

The rule in Shelley's Case is thus stated in 4 Kent, Commentaries 215, quoted in Hancock v. Butler, 21 Tex. 804, and in many other cases:

"When a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument, there is a limitation, by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons, to take in succession, from genera-

tion to generation, the limitation to the heirs entitles the ancestor to the whole estate."

■ "The rule in Shelley's Case has always been a subject of much controversy. The courts, text-writers, and lawyers have often disagreed in the construction of this rule. The courts of this state have not been in accord in the construction and application of the rule to wills and deeds, and the opinions have by no means been uniform. However, it is now settled in this state that it will be given a strict construction and it is only when the facts bring a case under the strict letter of the rule that the courts of this state will apply and enforce it." Calvery v. Calvery, 122 Tex. 204, 55 S.W.2d 527, 531.

In the following cases it was held that the language of the instrument involved in each brought the case within the rule in Shelley's Case: Busha v. Fortson, 5 'Cir., 116 F.2d 325; Lacey v. Floyd, 99 Tex. 112, 87 S.W. 665; Crist v. Morgan, Tex.Com. App., 245 S.W. 659; Peters v. Rice, Tex. Civ.App., 157 S.W. 1181, writ refused; Pearce v. Pearce, 104 Tex. 73, 134 S.W. 210; Scott v. Brin, 48 Tex.Civ.App. 500, 107 S.W. 565, writ refused; Brown v. Bryant, 17 Tex.Civ.App. 454, 44 S.W. 399, writ refused; and Davis v. First Nat. Bank, 139 Tex. 36, 161 S.W.2d 467, 144 A.L.R. 1. In the following it was held that the language of the instrument did not bring the case within the rule in Shelley's Case: Hancock v. Butler, 21 Tex. 804; Simonton v. White, 93 Tex. 50, 53 S.W. 339, 77 Am.St.Rep. 824; Hunting v. Jones, Tex.Com.App., 215 S.W. 959; Wallace v. First Nat. Bank, 120 Tex. 92, 35 S.W.2d 1036; Calvery v. Calvery, 122 Tex. 204, 55 S.W.2d 527; and Federal Land Bank v. Little, 130 Tex. 173, 107 S.W.2d 374. If there is any conflict between Busha v. Fortson, Peters v. Rice and Pearce v. Pearce, on the one hand, and Wallace v. First Nat. Bank, 'Calvery v. Calvery, and Federal Land Bank v. Little, on the other, we must follow the latter.

We have carefully compared the language of the will before us with that of each of the instruments construed in the foregoing cases.

■ We do not consider it necessary to restate the rules applicable in a case like the one before us. They are discussed at great length in many of the above cases, especially in the fairly recent cases of Wallace v. First Nat. Bank and Calvery v. Calvery, supra. When we endeavor to harmonize and give effect to every part of A. J. Dukes' will, we readily come to the conclusion that he intended that the three named beneficiaries, including A. J. Poe, should have a life estate only in the lands respectively left to them, and that the remainder should go to the bodily heirs, if any, who should be living at the time of the death of the life tenant, and that, if there should be no bodily heirs of the life tenant living at his death, the remainder estate should go to the bodily heirs of the testator. It is clear to us that he intended that the remaindermen should take not by inheritance from the life tenant, but from and under the will of the testator. The first preference of the testator was that the remainder should be taken by the bodily heirs of the life tenant, and the second or alternative choice was that the remainder should be taken by the bodily heirs of the testator. The limiting provisions of the will destroy any presumption that the testator intended to use the term "bodily heirs" in such technical sense as to vest fee simple title in the named beneficiaries. Only by ignoring some of the provisions of the will could we apply the rule in Shelley's Case here.

We now come to another question. The will provides that if the named beneficiary dies without bodily heirs, the "property herein mentioned shall revert back to my estate and be divided equally between my bodily heirs." Did the testator intend in such event that the remainder should go to his bodily heirs who were living at the time of his death, or to his bodily heirs who were living at the time of the death of the life tenant? The relevancy of the question is thus illustrated. Roberta Richardson, daughter of the testator and mother of appellant, was living when the testator died. If the bodily heirs of the testator, with respect to the right to the contingent remainder, are determinable as of the time of the testator's death, then the contingent re-

mainder was an expectancy which belonged to Roberta Richardson, and passed by her deed to A. J. Poe. If, on the other hand, the testator's bodily heirs are determinable as of the time the life estate terminates, to-wit, at the death of A. J. Poe, the appellant would own such remainder interest if his mother should predecease the life tenant (assuming that at such time he still retains his status as Roberta Richardson's only child).

In 49 A.L.R. 174, 127 A.L.R. 602, and 169 A.L.R. 207 are Annotations of numerous decisions bearing on the general question of the time when members of a class described as "heirs," "next of kin," "relations," etc., to whom a future gift is made, are to be ascertained. The annotations contain statements of two general rules which are amply sustained by the decisions.

■ "It is a general rule of testamentary construction, so universally recognized as to render superfluous a full citation of the cases which support it, that, in the absence of clear and unambiguous indications of a different intention to be derived from the context of the will, read in the light of the surrounding circumstances, the class described as testator's heirs, or next of kin, or relations, or such persons as would take his estate by the rules of law if he had died intestate, to whom a remainder or executory interest is given by the will, is to be ascertained at the death of the testator.

"One of the reasons adduced in support of this rule of construction is that it gives the words of description their natural and prima facie meaning.

"A reason more frequently brought forward is the preference of the law for a construction which will vest an estate at the earliest opportunity. But since contingent remainders in property are now protected to a considerable degree by modern legislation, the tendency of the modern cases is to put the reason of the rule not on any fondness which the law has for vested over contingent interests, but upon the fact that heirs at law, by the very meaning of the words, are usually those persons who take inheritable real property immediately on the death of the owner if he dies intestate." 49 A.L.R., pp. 177-180.

"The rule above stated is not a rule of substantive law, but a rule of interpretation, which has been adopted by the courts as one means of ascertaining the intention of the testator as expressed in his will; and it never should be used to defeat what, from the whole will, appears with reasonable certainty to have been his intention." 49 A.L.R., p. 180.

Under the general rule, Dukes' bodily heirs, in the event they should become entitled to the remainder estate by reason of the death of A. J. Poe without living bodily heirs, would be determinable as of the time of the testator's death, and not as of the time of Poe's death. Appellant readily concedes the general rule, but argues that the language of the will brings it within the exceptional cases where the members of the class designated as the testator's "heirs" will be determined as of some time other than the testator's death. Since the general rule is conceded, we shall undertake to ascertain whether there is language in the will sufficient to take the case out of the general rule.

■ It is appellant's theory that the testator must not have intended to give the named beneficiaries life estates, and also to give them the contingent remainders in the same property in which they respectively held life estates. If the testator's bodily heirs who are to take the contingent remainders are to be ascertained as of the testator's death, the result is that Poe, for instance, became entitled to a contingent remainder which under no circumstances could have conferred upon him the right of possession during his lifetime. However, the great weight of authority is to the effect that the fact that the first taker is among the class to whom the property is limited is not of itself sufficient to overcome the presumption that the membership of the class to whom the property is limited is to be ascertained at testator's death. See discussion and authorities cited in 49 A.L.R. at page 182, 127 A.L.R. at page 607, and 169 A.L.R. at page 210. Such fact is a circumstance which the court may consider in determining whether the general

rule should be applied, and if the first taker is the only person who belonged to the class at the time of testator's death it is a stronger circumstance than if he was one of several members of the class.

We shall comment briefly on the cases cited by appellant in support of the above proposition.

Houston v. Schuhmann, Tex.Civ.App., 92 S.W.2d 1086, writ refused, involved a question different from that before us. The property was left in part to a class, which included the children of a named person. Another child was born to such named person after the testator's death, and the question to be decided was whether the class would open to include the after-born child. We do not have such a question here. There were no additional children born to the testator either after the will was written or after his death. In other words, the class named as bodily heirs was complete at his death.

Heard v. Read, 169 Mass. 216, 47 N.E. 778; Gross v. Hartford-Connecticut Trust Co., 100 Conn. 332, 123 A. 907; Farrell v. Cogley, Tex.Civ.App., 146 S.W. 315, writ refused; and Genung v. Best, 100 N.J.Eq. 250, 135 A. 514, each involved a situation where the first taker was the only member of the class to whom the property was limited, and such fact, and other facts not necessary here to mention, were in each instance considered sufficient to take the case out of the general rule. McKay v. Audubon Soc., Inc., 318 Mass. 482, 62 N.E. 2d 117, involved facts quite different from those now before us.

We cannot accept appellant's proposition above mentioned.

■ His next proposition reads as follows:

"Whenever a life estate is given, with the remainder over to the issue of the life tenant, and such issue failing, then to the testator's heirs, it is presumed that the testator intended to exclude the life tenant from this class."

Appellant cites decisions which contain excerpts which might seem to support the above proposition, but we think that even in the hypothetical case set out in the proposition the general rule of ascertaining the members of the class at the death of the testator would apply unless there were still other facts and circumstances to show that the testator intended otherwise.

Union & New Haven Trust Co. v. Ackerman, 114 Conn. 152, 158 A. 224, presented circumstances other than the mere fact that there was a remainder contingent upon failure of issue of the life tenant. There the will was read in the light of the financial circumstances of the beneficiaries, consideration being given to the fact that the beneficiaries of the will were also the beneficiaries of other trust estates, which, with the testator's will, constituted a plan for the support of the beneficiaries. Throughout the opinion the court recognized the general rules above mentioned, saying, among other things, that "it has also been held that the mere fact that the life tenants are also next of kin does not necessarily exclude them from the latter designation."

Tyler v. City Bank Farmers Trust Co., 314 Mass. 528, 50 N.E.2d 778, 780, is cited by appellant. The opinion contains excellent definitions of many of the rules here involved, and cites many leading decisions. Also, under the facts of the case it was held that the members of the class were to be determined as of the time of testator's death. We quote a few excerpts from the opinion:

"Accordingly, unless a contrary intention appears, a gift in a will to the heirs of a person, whether he be the testator or a life tenant or another, will be construed as a gift to such heirs determined as of the time of the death of that person."

"This general rule has been held to apply although the life tenant, on whose death the property was to pass to the heirs of the testator, was himself one of those heirs (citing many cases), so that the gift over could never come into his actual possession."

"This general rule applies even though the gift is in the form of a direction to pay over and distribute at a future time, without any words of present gift (citing cases), although that fact may be weighed with

other indications against the application of the general rule."

The opinion declares that the general rule may yield where it appears that the testator used the word "heirs" in an accurate sense, to denote a hypothetical and artificial class composed of those who would have become heirs had the ancestor lived until some future time, usually the termination of a life estate, and in such case the intention of the testator will be given effect. It is further declared that sometimes the intention of the testator is disclosed by the fact that the application of the general rule would produce a result inconsistent with some provision of the will.

The court held that the general rule should be applied, and said that the following facts were not enough to take the case out of the general rule: (a) The life tenant was the sole heir. (b) The distribution to the heirs of the testator would come about only when the life tenant and her issue were extinct. (c) The gift to her issue, and failing issue, to the heirs of the testator, took the form of a mere direction to pay over.

The case cited, rather than being in support of appellant's theories, is an illustration of the force of the general rule and the lengths to which the courts go in applying it.

Carr v. New England Anti-Vivisection Soc., 234 Mass. 217, 125 N.E. 159, was decided principally because of the use of the phrase "then living" in referring to the heirs of the testator.

Craig v. McFadden, Tex.Civ.App., 191 S.W. 203, writ refused, involved a joint will of a husband and wife, in which the use of the entire community estate, as well as the separate property of each, was left to the survivor for life, with full power of disposition, with the direction that upon the death of the survivor such of the property as should still be on hand was to be divided into two equal moieties or halves, one to be distributed among the heirs of the husband, the other among the heirs of the wife. There were no children. It was held that the heirs referred to were those who answered to that description as of the time the survivor died. The case is not in point here on the facts.

It is stated in the Annotation in 49 A.L.R., at page 185, that:

"The mere circumstance that the gift to heirs, or to the next of kin, is not immediate, but is contingent upon a future event which may or may not happen, is insufficient of itself to render the description applicable only to such person or persons as should form the class at the time of the occurrence of the event."

Reference is made to the cases there cited.

The third proposition asserted by appellant is as follows:

"Where it is provided that a remainder shall pass to the testator's heirs upon the termination of a life estate, and this is contingent upon the failure of issue of the life tenant, an event which could only occur subsequent to the testator's death, the class of remaindermen is determined as of the time of the life tenant's death.

Appellant cites In re Wilson's Will, Sur.Ct., 48 N.Y.S.2d 835. While there is language in the opinion, that of the Surrogate's Court of Kings County, New York, to the effect that it is generally held that heirship of the testator will be determined as of the death of the life tenant where the gift of the remainder to the testator's heirs is contingent upon the failure of issue to the life tenant, such language is mere dictum, because the remainder there involved was not a contingent, but a vested one. The actual holding was that the testator's heirs should be determined as of the date of his death, even though the daughter, for whom the trust had been created, was the only member of that class.

King v. Howell, Tex.Civ.App., 120 S.W. 2d 298, involved the same kind of situation found in Craig v. McFadden, Tex.Civ.App., 191 S.W. 203, cited supra, and is readily distinguishable from the case on appeal.

In his fourth numbered proposition appellant declares that a testator by express words can postpone to any future date the time at which his bodily heirs will be ascertained, unless otherwise legally forbidden. We agree with his proposition, but not with his contention that the testa-

574

tor did so in this case. We shall discuss the cases cited in support of appellant's contention.

Chace v. Gregg, 88 Tex. 552, 32 S.W. 520, involved property left to the wife, conditioned that if she should die without issue, it should go to a named son by a former marriage, "if then living," and if dead, to his nearest heirs. The son predeceased his stepmother. The court held that the son never became entitled to the contingent remainder, because he was not living when the stepmother died, and that his deed thereto did not cut off his heirs from claiming the property at the death of the stepmother. The reasons for the holding appear obvious, and distinguish the case from the one before us.

Norman v. Horton, 344 Mo. 290, 126 S.W.2d 187, 190, 125 A.L.R. 531, was decided on the particular language of the deed there involved, and perhaps may best be distinguished from the case on appeal by quoting from the court's opinion:

"The instant case does not involve the grant of a life estate with a simple 'reversion in grantor and his heirs' or 'remainder to grantor's heirs' or 'remainder to the life tenant's issue or, in default of such issue, to grantor's heirs.' "

We have carefully examined all of the decisions cited by appellant, and have compared the language in the instruments involved in the cited cases with the language of Dukes' will. We find nothing in the present will to justify a refusal to apply the general rule of construction, that is to say, that the testator's bodily heirs should be determined as of the time of his death. It appears, therefore, in view of the deed executed by appellant's mother, that appellant has no contingent remainder interest in the property left to appellee, and that appellant was therefore not aggrieved by the judgment of the trial court. The judgment decrees that Poe take the property free from any person claiming under the will. We do not have before us on this appeal any question relating to the rights of a child that might be born to Poe, and consequently express no opinion relative thereto.

The judgment is affirmed.